**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DARRELL ARCHER, et al., | ) | Case No.: 1:12-cv-00261 - AWI - JLT |
| | ) | |
| Plaintiffs, | ) | ORDER DISMISSING COMLAINT WITH LEAVE TO AMEND |
| | ) | |
| v. | ) | |
| | ) | (Doc. 1) |
| CITY OF TAFT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Darrell Archer and Keitha Darquea ("Plaintiffs") initiated this action by filing a complaint and paying the requisite filing fee on February 23, 2012. (Doc. 1). For the following reasons, Plaintiffs' complaint is **DISMISSED WITH LEAVE TO AMEND**.

**I.     Pleading Requirements**

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of a complaint

1

is to give the defendant fair notice of the claims against him, and the grounds upon which the

complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

Conclusory and vague allegations do not support a cause of action. *Ivey v. Board of Regents*, 673 F.2d

266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When factual allegations are well-pled, a court should

assume their truth and determine whether the facts would make the plaintiff entitled to relief;

conclusions in the pleading are not entitled to the same assumption of truth. *Id.*

The Court has a duty to dismiss a case at any time it determines an action fails to state a claim,

"notwithstanding any filing fee that may have been paid." 28 U.S.C. § 1915e(2). Accordingly, a court

"may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a

claim." *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal

Practice and Procedure*, § 1357 at 593 (1963). However, the Court may grant leave to amend a

complaint to the extent deficiencies of the complaint can be cured by an amendment. *Lopez v. Smith*,

203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

## II.    Plaintiffs' Allegations

Plaintiffs assert they own real property in the City of Taft, located at 300 Lucard Street. (Doc.

1 at 10). Plaintiffs allege the corner property is large and contains three buildings, including a three-

apartment building, a two-car garage, and a two-story cottage. *Id.* According to Plaintiffs, they "have

been doing construction and improvement on the property for the last few years when they have had

2

time, already having put a new foundation under the cottage and the garage, and a new roof on the garage along with remodeling two of the apartments. . ." *Id.* Consequently, Plaintiffs had a stack of lumber, some metal sheeting, and some smaller pieces of lumber on the property "being saved for when they returned to further their construction work." *Id.*

According to Plaintiffs, on June 17 2010, defendant Jill Gipson, Code Enforcement Officer for Taft, "trespassed on [their] property for the purpose of posting a Code Violation Notice, then mailed a certified letter of Notice of Violation . . . to Mary Meredith, a co-owner of the Lucard St. property, to the address of Plaintiffs." (Doc. 1 at 11). Plaintiffs assert they did not receive notice of the certified letter from the Post Office, and the letter was returned to Taft on July 12, 2010. *Id.*

Plaintiffs contend "employees and machinery" of J.E. Burke Construction, Inc., a contractor for the City of Taft, "trespassed on Plaintiffs' property, stole all the lumber, destroyed the large rock planter, [and] stole the components of it" on September 24, 2010. (Doc. 1 at 12). The Contractor "created an invoice in the amount of $892 for work performed." *Id.* at 25. Plaintiffs allege the invoice included "trash removal and vegetation removal," but "[t]here was no overgrown vegetation [and] no trash." *Id.* at 12, 25. A "Declaration of Substandard Property was filed with the Kern County Recorder by Taft Code Enforcement Dept. signed by Jill Gipson" on October 11, 2010. *Id.* at 12. Thereafter, Jill Gipson created an invoice dated October 26, 2010 charging Plaintiffs a total of $937.36, which included the costs for removal by the contractor, time expended by code enforcement in the amount of $39.82, and mailing costs in the amount of $5.54. *Id.* at 25.

Plaintiffs allege they "were not aware of any of these actions at the time of their occurrence." (Doc. 1 at 13). Rather, Plaintiffs assert they "only became aware of Taft's actions after receipt of a certified letter dated February 23, 2011 wherein Plaintiffs were notified of Taft's intention to file a lien on their property" for violations of Taft City Code §§ 3-4-8(A)(3)(a) and (c), which govern public nuisances and inadequately maintained property. *Id.* at 13, 22. The notice informed Plaintiffs also that their property would be addressed at the City Council meeting held on March 15, 2011, which Plaintiffs attended. *Id.* at 13.

At the City Council meeting, Plaintiffs assert they "expressed their concern over Taft's actions." (Doc. 1 at 13). Plaintiffs contend the mayor, council members, the city clerk, and the city

attorney displayed a "uniform attitude" of "general indifference." *Id.*  In addition, Plaintiffs allege the mayor told Darrell Archer to "sit down" after he accused the city of "exerting acts of ownership over private property." *Id.*  According to Plaintiffs, "Taft's only procedure to address action by code enforcement is a notice, and a hearing before the City Council." *Id.* at 27.  Because Plaintiffs refused to pay the amount due, the city placed a lien on the property located at 300 Lucard Street.  *Id.*

## III.   Discussion and Analysis

Based upon the foregoing facts, Plaintiffs allege violations of the Fourth Amendment, Fifth Amendment, Eighth Amendment, Fourteenth Amendment; civil rights violations pursuant to 42 U.S.C. § 1983; and a conspiracy to violate civil rights pursuant to 18 U.S.C. § 241.  Plaintiffs allege defendants violated several sections of the California Penal Code by destroying private property, trespassing, and committing grand theft.  Further, Plaintiffs state causes of action for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, failure to perform mandatory duties, violations of oath of office, and domestic terrorism.

### A.    Civil Rights Violations

Notably, the Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment do not create direct causes of action.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 929 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution."  However, 42 U.S.C. § 1983 ("Section 1983") "is a method for vindicating federal rights elsewhere conferred."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Thus, an individual may bring an action for the deprivation of civil rights pursuant to Section 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  A plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir. 1976).

1    To sufficiently allege a Section 1983 claim, a plaintiff must allege a specific injury and show

2  causal relationship between the defendant's conduct and the alleged injury suffered by the plaintiff.

3  *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.

4  1978) (a connection shown where a defendant "does an affirmative act, participates in another's

5  affirmative acts, or omits to perform an act which he is legally required to do so that it causes the

6  deprivation of which complaint is made").  Significantly, there is no respondeat superior liability

7  under Section 1983, and the supervisor of an individual who allegedly violated constitutional rights is

8  not made liable to a plaintiff simply by virtue of that role.  *Monell v. Dep't of Soc. Servs.*, 436 U.S.

9  658, 691 (1978).

10    Finally, as with other claims, conclusory allegations unsupported by facts are insufficient to

11  state a civil rights claim under Section 1983.  *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

12    1.    Fourth Amendment

13    The Fourth Amendment proscribes a freedom from unreasonable searches and seizures. [1]  *U.S.*

14  *Constitution, amend. IV.*  The Supreme Court explained an individual "must demonstrate that he

15  personally has an expectation of privacy . . ., and that his expectation is reasonable; i.e., one that has a

16  'source outside of the Fourth Amendment, either by reference to concepts of real or personal property

17  law or to understandings that are recognized and permitted by society.'"  *Minnesota v. Carter*, 525

18  U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)).  Although Plaintiffs

19  allege a search occurred on the property, there are no facts to support this allegation.

20    On the other hand, there are facts supporting their claim that an unlawful seizure occurred.

21  Significantly, the warrant requirement encompasses entry upon private property to abate a known

22  nuisance.  *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990).   Here, though Plaintiffs

23  admit that city officials determined a lumber pile, scrap metal and a planter constituted a nuisance,

24  Defendants are prohibited from entry onto Plaintiffs' property to abate the nuisance absent a warrant.

25

26

27        [1] Specifically, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or

28  things to be seized." *U.S. Constitution, amend. IV.*

5

Plaintiffs assert that no such warrant was obtained.  Consequently, Plaintiffs have stated a cognizable claim for a violation of their Fourth Amendment rights against the City of Taft.

### 2.      Fifth Amendment

Plaintiffs contend the defendants' actions constitute a due process violation under the Fifth Amendment.  However, the Fifth Amendment applies only to actions by the federal government.  *Rank v. Nimmo,* 677 F.2d 692, 701 (9th Cir. 1982).  There must be a "significantly close nexus" between the federal government and the actor for the Fifth Amendment to apply to nonfederal entities.  *Id.* Therefore, Plaintiffs cannot make a cognizable claim against the defendants on Fifth Amendment grounds and the complaint, on these grounds, is **DISMISSED**.

### 3.      Eighth Amendment

Plaintiffs allege Defendants violated the Eighth Amendment and "inflicted cruel and unusual punishment upon Plaintiffs. . ." (Doc. 1 at 32).  However, the prohibition of cruel and unusual punishment takes effect only after criminal conviction and sentence.  *Lee v. City of Los Angeles*, 250 F.3d 668, 868 (9th Cir. 2001).  Here, Plaintiffs have not been convicted of a crime and are not subject to criminal punishment.  Thus, the Eighth Amendment is not applicable and the complaint, on these grounds, is **DISMISSED**.

### 4.      Fourteenth Amendment

According to Plaintiffs, Defendants violated their rights under the Fourteenth Amendment by depriving Plaintiffs of their private property without due process, and failing "to provide Plaintiffs equal protection under the law." (Doc. 1 at 32-33).

#### a.      Due Process

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  *U.S. Constitution, amend. XIV §1.*  This clause guarantees both procedural and substantive due process, protecting individuals against the deprivation of liberty or property interest by the government.

A procedural due process analysis focuses upon "'how and when' the government did it." *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990).  "A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a

6

deprivation of the interest by the government, and (3) lack of process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).   Here, Plaintiff alleges Defendants "failed to obtain a warrant, failed to provide a hearing . . . prior to deprivation of Plaintiff's property and failed to provide a reasonable post deprivation remedy after action against Plaintiffs." (Doc. 1 at 33).   Thus, Plaintiffs have stated a cognizable claim for a violation of their rights to procedural due process.

### b.    Equal Protection

The Equal Protection Clause states that "no state shall… deny to any person within its jurisdiction the equal protection of the laws." *U.S. Constitution, amend. XIV §1*.  In essence, this commands that all persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  A plaintiff can establish an equal protection claim in two ways.  First, a plaintiff may allege "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).  Second, where the acts in question do not involve a protected class, a plaintiff can establish a "class of one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Even when viewed liberally, Plaintiffs' Complaint fails to state an equal protection violation. Although Plaintiffs contend Defendants violated their right to equal protection, their conclusion is insufficient to state a cognizable claim, because no facts to support this assertion. *See Iqbal*, 129 S. Ct. at 1949; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the court is "not bound to accept as true a legal conclusion couched as a factual allegation").  Plaintiffs do not allege they are members of a protected class, or that they have been treated differently from others similarly situated.  Therefore, Plaintiffs claim for an equal protection violation is **DISMISSED**.

### B.    Racketeer Influenced and Corrupt Organizations Act ("RICO")

RICO allows a private citizen to recover damages for conduct of an enterprise through a pattern of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1960, *et seq*.  The elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."

1  *Living Designs, Inc. v. E.I. DuPont de Nemours Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *see also*

2  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The RICO statute enumerates specific acts

3  which satisfy the "racketeering activity" element, such as "an act or threat involving murder,

4  kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a

5  controlled substance or listed chemical . . ." 18 U.S.C. § 1961(1).  In addition, to establish a pattern,

6  Plaintiffs must "show that the racketeering predicates are related [to each other] and that they amount

7  to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492

8  U.S. 229, 239 (1989).

9          Significantly, Plaintiffs have not identified a specific predicate act by Defendants, nor

10 presented facts establishing a pattern of actions.  Although Plaintiffs assert Defendants "usually and

11 customarily" take actions that would violate RICO, their allegations seem to be based upon a single

12 act which, clearly, is insufficient to demonstrate a pattern of racketeering activity.  *See Sanford v.*

13 *MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (a plaintiff must show two or more acts

14 constituting a pattern).  Thus, Plaintiffs failed to state a cognizable claim for a violation of RICO, and

15 this claim against Defendants is **DISMISSED**.

16         **C.     Federal Criminal Statutes**

17         Plaintiffs contend Defendants committed extortion,[2] conspiracy in violation of 18 U.S.C. §241,

18 and domestic terrorism in violation of 18 U.S.C. § 2331 and, thereby, violated federal law. (Doc. 1 at

19 43, 53).  However, these statutes are federal criminal statutes that do not provide for a private civil

20 right of action.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (affirming dismissal of claims

21 brought under criminal provisions that "provide[d] no basis for civil remedy"); *see also Williams v.*

22 *Technique Towing/Advanced Automotive/GB7*, 2011 U.S. Dist. LEXIS 77089, at *6 (E.D. Cal. July

23 12, 2012) (explaining "claims under Title 18 U.S.C. must fail because these criminal statutes do not

24 provide a private right of action").  Consequently, Plaintiffs are unable to state cognizable claims for

25 violations of Title 18, and these claims for extortion, conspiracy, and domestic terrorism must be

26 **DISMISSED**.

27 _____

28      [2] Although Plaintiffs allege Defendants violated 18 U.S.C. § 891(7), the statute contains only a definition as
related to extortionate credit transactions.  Rather, the statute regarding the crime of extortion is 18 U.S.C. 875.

1   ///

2   ///

3        **D.**       **Violations of California Penal Code**

4        Plaintiffs allege Defendants violated California Penal Code § 594 (destruction of private

5   property), § 487 (grand theft), and § 602 (trespass). (Doc. 1 at 49-53). Notably, the Supreme Court

6   has observed criminal statutes rarely imply a private right of action. *Chrysler Corp. v. Brown*, 441

7   U.S. 281, 316 (1979). When a private right of action was implicated, "there was at least a statutory

8   basis for interring that a civil cause of action of some sort lay in favor of someone." *Id.* (quoting *Cort*

9   *v. Ash*, 422 U.S. 66, 79 (1975)). The Court has reviewed the penal codes sections in question, and

10  there is no language suggesting that civil enforcement of any kind is available to Plaintiffs. *See Cort*,

11  422 U.S. at 79-80; *see also Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (no

12  private right of action for violation of criminal statutes); *Ellis v. City of San Diego*, 176 F.3d 1183,

13  1189 (9th Cir. 1999) (district court properly dismissed claims brought under the California Penal Code

14  because the statutes do not create enforceable individual rights). Accordingly, Plaintiffs claims for

15  violations of California Penal Code are **DISMISSED**.

16       **E.**       **Failure to Perform Mandatory Duty**

17       A private right of action against a public entity for failure to perform a mandatory duty is

18  created by Cal. Gov't Code § 815.6, which provides:

19       Where a public entity is under a mandatory duty imposed by an enactment that is

20  designated to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty

21  unless the public entity establishes that it exercised reasonable diligence to discharge

22  the duty.

23  *Id.* California courts utilize a three-pronged test to determine if liability for a mandatory duty may be

24  imposed upon the public entity: (1) a statute or enactment must impose a mandatory duty (2) that

25  intends to protect against the kind of risk of injury suffered by the plaintiff and (3) breach of the

26  mandatory duty must be a proximate cause of the injury suffered. *County of Los Angeles v. Superior*

27  *Court*, 102 Cal.App.4th 627, 638-39 (2002). Here, Plaintiffs identify several statutes in the California

28  Code they believe demonstrate Defendants had mandatory duties upon which they failed to act.

1    ///

2    ////

3              1.      Local appeals board

4         Plaintiffs contend, "Health and Safety Code § 17920. 5 and 17920.6 require Defendants to

5    provide for a local appeals board to hear appeals regarding the allegations and or findings against

6    Plaintiffs.  A housing appeals board to hear appeals regarding existing buildings is required."  (Doc. 1

7    at 46).  Notably, however, the statutes identified do not require a city or county to create a separate

8    "local appeals board," as Plaintiffs contend.  Rather, a "local appeals board" is defined as "the board

9    or agency of a city or county which is authorized by the governing body of the city or county to hear

10   appeals regarding the building requirements of the city or county."  Cal. Health & Saf. Code § 17920.5

11   The statutes explains, "In any area in which there is no such board or agency, 'local appeals board'

12   means the governing body of the city or county having jurisdiction over such area."  *Id.*  Thus, a city

13   council may be considered the local appeals board.  Further, the local appeals board or governing body

14   may act as the "housing appeals board."  Cal. Health & Saf. Code § 17920.6.   Consequently, there is

15   not a mandatory duty to create a local appeals board as a separate body from the city council.

16              2.      Abatement and local ordinances

17        According to Plaintiffs, Defendants breached a mandatory duty in Cal. Health & Saf. Code §

18   17922.  The statute governs building standards and regulations, and provides: "A local ordinance may

19   not permit any action or proceeding to abate violations of regulations governing maintenance of

20   existing buildings, unless the building is a substandard building or the violation is a misdemeanor."

21   Cal. Health & Saf. Code § 17922(g).  The statute is inapplicable to the facts at hand, because the

22   alleged nuisance was not related to an existing building, but rather the condition Plaintiffs' real

23   property.  Therefore, Plaintiffs have not shown a breach of a mandatory duty arising under § 17922.

24              3.      Training of construction inspectors, plan examiners and building officials

25        Plaintiffs assert "construction inspectors, plan examiners and building officials [are] to be

26   licensed, certified and trained" pursuant to Cal. Health & Saf. Code §§ 18949.25-31, 19870.  (Doc.  1

27   at 47).  "Building officials" includes individuals "invested with the responsibility for overseeing local

28   code enforcement activities, including administration of the building department, interpretation of

                                                    10

code requirements, and direction of the code adoption process." *Id.* § 18949.27.  Consequently, as a code enforcement officer, defendant Jill Gibson may be required "complete one year of verifiable experience in the appropriate field, and shall, within one year thereafter, obtain certification from a recognized state, national, or international association." *Id.* § 18949.28(a).

According to Plaintiffs, Defendants violated these sections "by failing to be properly trained and to properly train Jill Gibson." (Doc. 1 at 47).  However, there is no duty for individuals other than the code enforcement officer to be trained.  Moreover, there are no facts alleged supporting Plaintiff's allegations that Defendants failed to ensure Jill Gibson had the requisite training, or that she was not exempted from such training from continuous employment as a building official.  *See* Cal. Health & Saf. Code § 18949.28(b).  Therefore, Plaintiffs have failed to state a cognizable claim for a violation of a mandatory duty.

### F.   Violation of Oath of Office

Plaintiffs identify "violation of oath of office" as a separate cause of action for Defendants' "fraud on Plaintiffs and others by willfully, blatantly, and purposefully disregarding the oath or promise they took prior to taking office." (Doc. 1 at 55-56).  To the extent Plaintiffs intend to state a claim for fraud, these conclusory allegations are insufficient to state a claim.

Under California law, Plaintiffs must allege the following to establish fraud: "a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); see also Cal. Civ. Code § 1572.  The burden to establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1120 (9th Cir. 2003); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (internal quotation marks and citation omitted).  Consequently, Plaintiffs'

allegations of fraud have not been pleading with sufficient specificity to meet the standards of Rule 9(b), and this claim is **DISMISSED**.

///

### IV.     Failure to Comply with Rule 8

Plaintiffs have failed comply with Rule 8(a) and (d) of the Federal Rules of Civil Procedure, which require "a **short and plain statement** of the claim showing that the pleader is entitled to relief" and each allegation to "be **simple, concise, and direct**." (emphasis added).  Plaintiffs' complaint, which contains 274 paragraphs of allegations and eleven claims for relief against over 15 defendants does not satisfy these requirements.  The Ninth Circuit explained:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. . . .

> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit [and] then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case who follow the rules, as well as defendants in the case in which the prolix pleading is filed.

*McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming district court's dismissal of the complaint for violation of Rule 8 and failure to comply with court orders); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (addressing dismissals for overly lengthy complaints and observing that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations").  Plaintiffs' complaint falls within the class complaints described by the Ninth Circuit in *McHenry* and *Cafassco*, and the length of the allegations make it difficult to determine a factual link between each defendant and the alleged harms suffered by Plaintiffs.

### V.     Conclusion and Order

12

Plaintiffs have established the Court has subject matter jurisdiction over this matter and may state a cognizable claim for violation of their Fourth Amendment Rights.  However, Plaintiffs' remaining causes of action either fail to state factual allegations in support or fail as a matter of law.  Accordingly, the Court will grant Plaintiffs leave to amend the complaint to cure the deficiencies identified.  *See Lopez*, 203 F.3d at 1128 (dismissal of a *pro se* complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts that he has alleged and that an opportunity to amend would be futile).

Plaintiffs are informed that the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once Plaintiffs file an amended complaint, the original pleading no longer serves any function in the case.   The amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Finally, Plaintiffs are warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986) (citing *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981).

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.      Plaintiffs' Complaint is **DISMISSED with leave to amend**;

2.      Within 21 days from the date of service of this order, Plaintiffs **SHALL** file an amended complaint, entitled "First Amended Complaint" curing the deficiencies identified by the Court in this order; and

3.       If Plaintiffs fail to comply with this order, the action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

Dated:   **April 26, 2012**                   **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE

13