1

2

3

4

5

6

7

8                                   **UNITED STATES DISTRICT COURT**

9                                   **EASTERN DISTRICT OF CALIFORNIA**

10

11   DARRELL ARCHER, et al.,                    )   Case No.: 1:12-cv-00261 - AWI - JLT
                                                )
12            Plaintiffs,                        )   FINDINGS AND RECOMMENDATIONS
                                                )   DISMISSING CERTAIN CLAIMS AND
13        v.                                     )   DEFENDANTS
                                                )
14   CITY OF TAFT, et al.,                       )
                                                )   ORDER DIRECTING CLERK OF THE COURT TO
15            Defendants.                        )   ISSUE SUMMOMS
                                                )
16                                               )
                                                )
17   _____)

18           Darrell Archer and Keitha Darquea ("Plaintiffs") initiated this action by filing their Complaint

19   and paying the requisite filing fee on February 23, 2012.  (Doc. 1).  On April 26, 2012, the Court

20   screened Plaintiffs' Complaint, and dismissed it with leave to amend.  (Doc. 3).  Pursuant to the

21   Court's order, Plaintiffs filed their First Amended Complaint on May 15, 2012.  (Doc. 4).

22           For the following reasons, the Court recommends the action proceed against defendants Jill

23   Gipson, J.E. Burke Construction Inc., and Joseph Burke, and the remaining defendants be dismissed.

     **I.        Pleading Requirements**
24
             General rules for pleading complaints are governed by the Federal Rules of Civil Procedure.  A
25
     complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of
26
     the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may
27
     include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a).  The Federal Rules
28

                                                      1

1  adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than

2  pleadings by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

3  　　　A complaint must state the elements of the plaintiff's claim in a plain and succinct manner.

4  *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984).  The purpose of a complaint

5  is to give the defendant fair notice of the claims against him, and the grounds upon which the

6  complaint stands.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).  The Supreme Court noted,

7
8
9
> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

10  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

11  Conclusory and vague allegations do not support a cause of action.  *Ivey v. Board of Regents*, 673 F.2d

12  266, 268 (9th Cir. 1982).  The Court clarified further,

13
14
15
16
17
> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

18  *Iqbal*, 129 S. Ct. at 1949 (citations omitted).  When factual allegations are well-pled, a court should

19  assume their truth and determine whether the facts would make the plaintiff entitled to relief;

20  conclusions in the pleading are not entitled to the same assumption of truth.  *Id.*

21  　　　The Court has a duty to dismiss a case at any time it determines an action fails to state a claim,

22  "notwithstanding any filing fee that may have been paid."  28 U.S.C. § 1915e(2).  Accordingly, a court

23  "may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a

24  claim."  *See Wong v. Bell*, 642 F.2d 359, 361 (9th Cir. 1981) (citing 5 C. Wright & A. Miller, *Federal*

25  *Practice and Procedure*, § 1357 at 593 (1963).  However, the Court may grant leave to amend a

26  complaint to the extent deficiencies of the complaint can be cured by an amendment.  *Lopez v. Smith*,

27  203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

28  ///

1     **II.     Plaintiffs' Allegations**

2          Plaintiffs assert they own real property in the City of Taft ("the City"), located at 300 Lucard

3     Street.  (Doc. 4 at 9).  Plaintiffs allege the corner property is large and contains three buildings,

4     including a three-apartment building, a two-car garage, and a two-story cottage.  *Id.*  According to

5     Plaintiffs, they used a property manager and did not go to their property in Taft "for a few months at a

6     time." *Id.* at 10.  Plaintiffs allege they had been doing construction, and "had a stack of old lumber ...,

7     some metal sheeting and some smaller pieces of lumber being saved for when they returned to further

8     their construction work." *Id.*

9          Plaintiffs contend defendant Jill Gipson, Code Enforcement Officer for Taft, "trespassed on

10    [their] property for the purpose of posting a Code Violation Notice" on June 17, 2010.  (Doc. 4 at 10).

11    Ms. Gibson "mailed a certified letter of Notice of Violation . . . to Mary Meredith, a co-owner of the

12    Lucard St. property, to the address of Plaintiffs." *Id.* at 10-11.  Plaintiffs assert they did not receive

13    notice of the certified letter from the Post Office, and the letter was returned to Taft on July 12, 2010.

14    *Id.* at 11.

15         According to Plaintiffs, Ms. Gibson and Joseph Burke, a contractor for the City, "trespassed on

16    Plaintiffs' property, stole all the lumber, destroyed the large rock planter, [and] stole the components

17    of it, without a warrant" on September 24, 2010.  (Doc. 4 at 11).  Plaintiffs allege Ms. Gipson filed "a

18    Declaration of Substandard Property" with the Kern County Recorder on October 11, 2010.  *Id.* at 12,

19    25. In addition, Ms. Gipson created an invoice dated October 26, 2010, charging Plaintiffs a total of

20    $937.36, which included the costs for removal by the contractor, time expended by code enforcement

21    in the amount of $39.82, and mailing costs in the amount of $5.54.  *Id.* at 24.  Plaintiffs contend the

22    invoice for the contractor and the City "include charges for the removal of trash and overgrown

23    vegetation/weeds." *Id.* at 12.  However, Plaintiffs assert "[t]here was no overgrown vegetation [and]

24    no trash." *Id.*

25         Plaintiffs allege they were not aware of any of these actions at the time of their occurrence, and

26    they "only became aware of Taft's actions after receipt of a certified letter dated February 23, 2011

27    wherein Plaintiffs were notified of Taft's intention to file a lien on their property" for violations of

28    Taft City Code §§ 3-4-8(A)(3)(a) and (c), which govern public nuisances and inadequately maintained

1   property.  *Id.* at 12.  The notice informed Plaintiffs their property would be addressed at the City

2   Council meeting held on March 15, 2011, which Plaintiffs attended.  *Id.* at 12-13.

3          Plaintiffs contend they "expressed their concern over Taft's action" at the City Council

4   meeting.  (Doc. 4 at 13).  Plaintiffs contend the mayor, council members, the city clerk, and the city

5   attorney displayed a "uniform attitude" of "general indifference."  *Id.*  Also, Plaintiffs allege the mayor

6   told Darrell Archer to "sit down" after he accused the city of "exerting acts of ownership over private

7   property."  *Id.*  According to Plaintiffs, "Defendants acted . . . as a unit and with complete indifference

8   to the damage caused by their wrongful action."  *Id.* at 26.  Because Plaintiffs refused to pay the

9   amount due, the City placed a lien on the property located at 300 Lucard Street on May 7, 2011.  *Id.*

10   **III.     Discussion and Analysis**

11          Based upon the foregoing facts, Plaintiffs allege violations of the Fourth Amendment and

12   Fourteenth Amendment under 42 U.S.C. § 1983 ("Section 1983"), violations of the Racketeer

13   Influenced and Corrupt Organizations ("RICO") Act, failure to perform mandatory duties, violations

14   of the oath of office, state conversion, and violations of California Civil Code § 52.1.  Plaintiff

15   identifies the following defendants in this action:  (1) the City of Taft; (2) Dave Noerr, former mayor

16   and current City Council member; (3) Randy Miller, Mayor and former Pro Tem Mayor; (4) Craig

17   Noble, former City Council member; (5) Paul Linder, current Pro Tem Mayor and former City

18   Council member; (6) Cliff Thompson, former City Council member; (7) Bob Gorson, City Manager;

19   (8) Craig Jones, Public Works Manager; (9) Orchel Krier, City Council member; (10) Ron Waldrop,

20   City Council member; (11) Jill Gipson, Code Enforcement Officer; (12) David Prentice, City

21   Attorney; (13) Louise Hudgens, City Clerk; (14) J.E. Burke Construction, Inc.; (15) Joseph Burke; and

22   (16) twenty-five "Doe" defendants.  (Doc. 4 at 1-3).

23          **A.      Section 1983 Claims**

24          Section 1983 "is a method for vindicating federal rights elsewhere conferred."  *Albright v.*

25   *Oliver*, 510 U.S. 266, 271 (1994).  Thus, an individual may bring an action for the deprivation of civil

26   rights pursuant to Section 1983 by alleging facts from which it may be inferred (1) he was deprived of

27   a federal right, and (2) a person or entity who committed the alleged violation acted under color of

28   state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Williams v. Gorton*, 529 F.2d 668, 670 (9th Cir.

4

1   1976).  A plaintiff must allege a specific injury and show causal relationship between the defendant's

2   conduct and the alleged injury suffered by the plaintiff.  *See Rizzo v. Goode*, 423 U.S. 362, 371-72,

3   377 (1976); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (a connection shown where a

4   defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an

5   act which he is legally required to do so that it causes the deprivation of which complaint is made").

6                           1.        The private parties are state actors

7          Plaintiffs identify J.E. Burke Construction Inc. and Joseph Burke as defendants in the action

8   and assert that both acted under the color of law.  However, "private parties are not generally acting

9   under color of state law."  *Price v. Hawaii*, 939 F.2d 702, 707-09 (9th Cir. 1991); *see also Harvey v.*

10  *Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be

11  viewed as a 'state actor' for section 1983 purposes."). Consequently, the Ninth Circuit explained that

12  "[w]hen addressing whether a private party acted under color of law, we . . . start with the presumption

13  that private conduct does not constitute governmental action."  *Sutton v. Providence St. Joseph*

14  *Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999).

15         "Section 1983 liability attaches only to individuals who carry a badge of authority of a State

16  and represent it in some capacity."  *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citations

17  omitted).  The Supreme Court has identified four tests to determine whether a private individual's

18  actions implicate state action: (1) the public function test, (2) the joint action test, (3) the state

19  compulsion test, and (4) the governmental nexus test.  *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th

20  Cir. 1997).

21         The Supreme Court explained, "Private persons, jointly engaged with state officials in the

22  prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of

23  law does not require that the accused be an officer of the State. It is enough that he is a willful

24  participant in joint activity with the State or its agents." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

25  941 (1982) (citation omitted). The test examines whether a state has "so far insinuated itself into a

26  position of interdependence with the private actor that it must be recognized as a joint participant in

27  the challenged activity."  *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d

28  503, 507 (9th Cir. 1989) (citing Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)).

1    Here, Plaintiffs allege the City hired J.E. Burke Construction Inc. to enter their real property

2    and remove their personal property.  (Doc. 4 at 24).  Also, Plaintiffs allege J.E. Burke Construction

3    Inc. and Joseph Burke entered the property with Code Enforcement Officer Gipson, without a warrant,

4    and removed lumber and a large rock planter.  *Id.*  Therefore, Plaintiffs have alleged minimally

5    sufficient facts supporting an inference that the Burke Defendants acted jointly with a state actor to

6    deprive Plaintiffs of constitutional rights.  Consequently, the Court finds the pleading sufficient to

7    satisfy the "joint action" test.[1]

8    2.    Fourth Amendment

9    The Fourth Amendment proscribes a freedom from unreasonable searches and seizures.[2]  *U.S.*

10   *Constitution, amend. IV.*  The Supreme Court explained an individual "must demonstrate that he

11   personally has an expectation of privacy . . ., and that his expectation is reasonable; i.e., one that has a

12   'source outside of the Fourth Amendment, either by reference to concepts of real or personal property

13   law or to understandings that are recognized and permitted by society.'"  *Minnesota v. Carter*, 525

14   U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978)).  Plaintiffs contend

15   Defendants entered their property without a warrant and "seized/stole personal property while acting

16   under color of law."  (Doc. 4 at 27).

17   Significantly, the warrant requirement encompasses entry upon private property to abate a

18   known nuisance.  *Conner v. City of Santa Ana*, 897 F.2d 1487, 1490 (9th Cir. 1990).   Here, though

19   Plaintiffs admit the City officials determined a lumbar pile, scrap metal and planter were a nuisance,

20   Defendants are prohibited from entry onto Plaintiffs' property to abate the nuisance without a warrant.

21   Plaintiffs contend no such warrant was obtained.  (Doc. 4 at 27).  However, a local government may

22   not be sued under section 1983 for injuries inflicted by its employee or agent, absent an official policy

23   or custom to inflict such an injury, made by lawmakers or those whose acts may fairly represent

24

25   [1] Because the joint action test is satisfied, the Court declines to discuss the three remaining tests to determine
     whether the defendants are state actors.
26

27   [2] Specifically, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses,
     papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon
     probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or
28   things to be seized." *U.S. Constitution, amend. IV.*

1  official policy.  *Monell*, 436 U.S. at 694.  Plaintiffs provide no facts to support their allegation that

2  "All Defendants" are liable under the section 1983 claims.  Significantly, the complaint lacks facts to

3  demonstrate that the City of Taft had a policy of inflicting such an injury.  Therefore, Plaintiffs do not

4  have a claim against "All Defendants."

5        On the other hand, Plaintiffs alleged Jill Gipson, J.E. Burke Construction Inc., and Joseph

6  Burke entered the property without a warrant and seized their property to abate the alleged nuisance.

7  Consequently, Plaintiffs have stated a cognizable claim for a violation of their Fourth Amendment

8  rights against defendants Jill Gipson, J.E.  Burke Construction Inc., and Joseph Burke.

9                    3.      Fourteenth Amendment

10       According to Plaintiffs, Defendants violated their rights under the Fourteenth Amendment by

11 depriving Plaintiffs of their private property without due process.  (Doc. 4 at 28). The Due Process

12 Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty,

13 or property, without due process of law." *U.S. Constitution, amend*. XIV §1. This clause guarantees

14 both procedural and substantive due process, protecting individuals against the deprivation of liberty

15 or property interest by the government.

16       A procedural due process analysis focuses upon "'how and when' the government did it."

17 *Amsden v. Moran*, 904 F.2d 748, 754 (1st Cir. 1990). "A § 1983 claim based upon procedural due

18 process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a

19 deprivation of the interest by the government, and (3) lack of process.  *Portman v. County of Santa*

20 *Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  Here, Plaintiff alleges Defendants failed to provide proper

21 notice or a hearing prior to the deprivation of their property, "failed to obtain a warrant prior to

22 seizure, and failed to provide a post-derivation remedy."  (Doc. 4 at 28).  Thus, Plaintiffs have stated a

23 cognizable claim for a violation of their rights to procedural due process.

24       **B.      Racketeer Influenced and Corrupt Organizations Act ("RICO")**

25       RICO allows a private citizen to recover damages for conduct of an enterprise through a

26 pattern of racketeering activity or the collection of an unlawful debt.  18 U.S.C. § 1960, *et seq*.  The

27 elements of a civil RICO claim are "(1) conduct (2) of an enterprise (3) through a pattern (4) of

28 racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property."

1    *Living Designs, Inc. v. E.I. DuPont de Nemours Co.*, 431 F.3d 353, 361 (9th Cir. 2005); *see also*

2    *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  The RICO statute enumerates specific acts

3    which satisfy the "racketeering activity" element, such as "an act or threat involving murder,

4    kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a

5    controlled substance or listed chemical . . ."  18 U.S.C. § 1961(1).  In addition, to establish a pattern,

6    Plaintiffs must "show that the racketeering predicates are related [to each other] and that they amount

7    to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492

8    U.S. 229, 239 (1989).

9          Plaintiffs allege the Defendants were engaged in the following predicate acts: (1) "conspiracy

10   to commit crimes" and (2) "trespass . . . without a warrant and absent due process."  (Doc. 4 at 32-33).

11   In addition, Plaintiffs assert these acts are a "regular ongoing practice [which] has victimized other

12   property owners in Taft."  (Doc. 4 at 33).  To support this contention, Plaintiffs provided a list of other

13   properties in the City of Taft with unpaid abatement costs upon which the City Council is considering

14   placing liens and allege that the owners of these properties "are victims of this criminal activity."

15   (Doc. 4 at 33; Exhibit G).  The list of names provided is insufficient to demonstrate a pattern of

16   racketeering activities, as there is no indication that these properties were subject to the same activity

17   that the Plaintiffs allege on their own property.  Plaintiffs' allegations of the Defendants' predicate acts

18   seem to be based upon a single act, which is insufficient to demonstrate a pattern of activity that would

19   violate RICO.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (a plaintiff must

20   show two or more acts constituting a pattern).  Moreover, Plaintiffs have not alleged facts supporting

21   the allegation of conspiracy or pattern of denial of due process.  Thus, Plaintiffs failed to state a

22   cognizable claim for a violation of RICO, and the Court recommends this claim be **DISMISSED**.

23          C.     **Violation of Oath of Office**

24          Plaintiffs identify "violation of oath of office" as a separate cause of action as Defendants

25   "misused their positions of trust and authority, intentionally, knowingly failed to keep their promise(s)

26   of their oath . . . have perpetrated a fraud."  (Doc. 4 at 34-35).  Plaintiffs allege they "reasonably relied

27   on the promises" Defendants made in their oaths.  (Doc. 4 at 34).  However, to the extent Plaintiffs

28   intend to state a claim for fraud, these conclusory allegations are insufficient to state a claim.

8

1    Under California law, Plaintiffs must allege the following to establish fraud: "a false

2    representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." *Moore v.*

3    *Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* Cal. Civ. Code § 1572.  The burden to establish

4    fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because "when

5    fraud is alleged, 'a party must state with particularity the circumstances constituting fraud." *Kearns v.*

6    *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).  "Averments of

7    fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."

8    *Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1120 (9th Cir. 2003); *see also Swartz v.*

9    *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2004) (allegations of fraud must include "an account of the

10   time, place, and specific content of the false representations as well as the identities of the parties to

11   the misrepresentations") (internal quotation marks and citation omitted).  Consequently, Plaintiffs'

12   allegations of fraud have not been plead with sufficient specificity to meet the standards of Rule 9(b),

13   and the Court recommends this claim be **DISMISSED**.

14         **D.      Failure to Perform Mandatory Duty**

15         A private right of action against a public entity for failure to perform a mandatory duty is

16   created by Cal. Gov't Code § 815.6, which provides:

17         Where a public entity is under a mandatory duty imposed by an enactment that is
         designated to protect against the risk of a particular kind of injury, the public entity is
18       liable for an injury of that kind proximately caused by its failure to discharge the duty
         unless the public entity establishes that it exercised reasonable diligence to discharge
19       the duty.

20

21   *Id.*  California courts utilize a three-pronged test to determine if liability for a mandatory duty may be

22   imposed upon the public entity: (1) a statute or enactment must impose a mandatory duty (2) that

23   intends to protect against the kind of risk of injury suffered by the plaintiff and (3) breach of the

24   mandatory duty must be a proximate cause of the injury suffered.  *County of Los Angeles v. Superior*

25   *Court*, 102 Cal.App.4th 627, 638-39 (2002).  Here, Plaintiffs identify several statutes in the California

26   Code they believe demonstrate Defendants had mandatory duties upon which they failed to act.

27   ///

28   ///

1    1.    California Code of Civil Procedure violation

2    According to Plaintiffs, Defendants breached a mandatory duty under Cal. Civ. Proc. Code §

3    1822.50 to "obtain a warrant prior to search and seizure, to provide due process, and to provide

4    Plaintiffs an opportunity to be heard prior to abatement and to provide an appeals hearing." (Doc. 4 at

5    36).  Notably, however, the statute identified only provides a definition for an inspection warrant as:

6        an order, in writing, in the name of the people, signed by a judge of a court of record,
         directed to a state or local official, commanding him to conduct any inspection required
7        or authorized by state or local law or regulation relating to building, fire, safety,
         plumbing, electrical, health, labor or zoning.
8

9    Cal. Civ. Proc. Code § 1822.50.  This statute does not support Plaintiffs assertion that Defendants

10   violated a mandatory duty to obtain a warrant, to provide due process, to allow Plaintiffs to be heard

11   before abatement, and to provide an appeals hearing.  Therefore, Plaintiffs have not shown a breach of

12   a mandatory duty arising under § 1822.50.

13    2.    Abatement order and pendency notice

14   According to Plaintiffs, Defendants breached a mandatory duty in Cal. Health & Saf. Code §

15   17982 "by not obtaining an abatement order form [sic] the Superior Court." (Doc. 4 at 36).  The

16   statute provides, "If any notice or order issued by an enforcement agency is not complied with within a

17   reasonable time . . . the enforcement agency may apply to the superior court for an order authorizing it

18   to remove any violation or abate any nuisance specified in the notice or order."  Cal. Health & Saf.

19   Code § 17982.  Plaintiffs allege they did not receive notice of the code violation but provide no further

20   allegations to support the applicability of this statute (Doc. 4 at 24-25), and this statute does not create

21   a mandatory duty for the agency to apply for a court order.

22   In addition, Plaintiffs assert "Defendants failed to record a Notice of Pendency pursuant to

23   Health & Safety Code 1[7]985(a),(b) at the commencement of abatement action." (Doc. 4 at 36).  The

24   statute Plaintiffs identify provides: an "enforcement agency which institutes an action or proceeding

25   pursuant to this article shall record a notice of the pendency of the action or proceeding in the county

26   recorder's office of the county where the property affected by the action or proceeding is situated . . ."

27   Cal. Health & Saf. Code § 17985(a).   Notably, this statute is inapplicable to the facts at hand because

28

10

1   it relates to the regulation of buildings and abatement of nuisances.  Thus, Plaintiffs have not shown a

2   breach of a mandatory duty arising under §17985.

3        Additionally, Plaintiffs assert, "Defendants failed to execute proper service pursuant to Health

4   and Safety Code 17988."  (Doc. 4 at 37).  The statute states: "In any action or proceeding brought

5   pursuant to this article, service of summons is sufficient if served in the manner provided in the Code

6   of Civil Procedure."  Cal. Health & Saf. Code § 17988.  However, there are no factual allegations that

7   Defendants initiated an action or proceed requiring service of process.  Therefore, Plaintiffs have not

8   shown a breach of a mandatory duty under § 17988.

9                    3.    Abatement and local ordinances

10       According to Plaintiffs, Defendants breached a mandatory duty in Cal. Health & Saf. Code §

11  17922(g).  The statute governs building standards and regulations, and provides: "A local ordinance

12  may not permit any action or proceeding to abate violations of regulations governing maintenance of

13  existing buildings, unless the building is a substandard building or the violation is a misdemeanor."

14  Cal. Health & Saf. Code § 17922(g).  The statute is inapplicable to the facts at hand, because the

15  alleged nuisance was not related to an existing building.  Therefore, Plaintiffs have not shown a breach

16  of a mandatory duty arising under § 17922.

17       In addition, Plaintiffs allege a breach of a mandatory duty under Cal. Health & Saf. Code §

18  17920.3 as incorporated by Cal. Health & Saf. Code § 17922(e).  However, this statute merely

19  provides the definition of substandard buildings and does not create a mandatory duty.

20                    4.    Appeals Board and right to an appeal

21       Plaintiffs assert that 2007 California Building Code Title 24 § 108.8 establishes Defendants

22  had a mandatory duty to have an Appeals Board.  (Doc. 4 at 38).  Plaintiffs contend, "Defendants do

23  not have an Appeals Board and failed [to] inform Plaintiffs of their right to such board."  *Id.*  Notably,

24  however, the statutes identified do not require a city or county to create a separate "local appeals

25  board," as Plaintiffs contend.[3]  Rather, a "local appeals board" is defined as "the board or agency of a

26

27

28       [3] Plaintiffs assert 2007 California Building Code Title 24 § 108.8  "establishes detailed procedures" for
    an appeals board.  (Doc. 4 at 38).   The statute cited contains the same language as the Cal. Health & Saf. Code

1   city or county which is authorized by the governing body of the city or county to hear appeals

2   regarding the building requirements of the city or county."  Cal. Health & Saf. Code § 17920.5.  The

3   statute explains, "In any area in which there is no such board or agency, 'local appeals board' means

4   the governing body of the city or county having jurisdiction over such area."  *Id.*  Thus, a city council

5   may be considered the local appeals board.  Further, the local appeals board or governing body may

6   act as the "housing appeals board."  Cal. Health & Saf. Code § 17920.6.   Consequently, there is not a

7   mandatory duty to create a local appeals board as a separate entity from the city council.

8         Furthermore, Plaintiffs fail to identify statutes to support their claim that Defendants had a

9   mandatory duty to "inform Plaintiffs of an Appeals Board and inform Plaintiffs of their rights to an

10  Appeals Board as mandated by state law Uniform Housing Code and Health & Safety Code."   (Doc. 4

11  at 37).  Therefore, Plaintiffs have failed to state a cognizable claim for a violation of a mandatory duty,

12  and the Court recommends this claim be **DISMISSED**.

13        **E.      Conversion**

14        Under California law, conversion is the "wrongful exercise of dominion over the property of

15  another."  *Oakdale Vill. Grp. v. Fong*, 43 Cal.App.4th, 539, 543 (1996).   In order to state a cognizable

16  claim for conversion Plaintiffs must allege the following elements: "(1) the plaintiff's ownership or

17  right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

18  property rights; and (3) damages."  *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998).   An

19  actual taking of the property is not necessary to establish a claim for conversion, but Plaintiffs must

20  demonstrate an assumption of control or ownership of the property and that defendant has converted

21  the property to his own use.  *Enter. Leasing Corp. v. Shugart Corp*., 231 Cal.App.3d. 737, 747 (1991).

22        Here, Plaintiffs allege Defendants are liable for conversion for "exercising dominion and

23  control" and "wrongfully convert[ing] said property to their use." (Doc. 4 at 38).  Plaintiffs seek

24  compensation for the conversion of their property under California Civil Code § 3336.  (Doc. 4 at 38).

25  While Plaintiffs allege this complaint against all Defendants in their "official and individual

26  capacities" they do not allege sufficient facts to demonstrate Defendants acted beyond the scope of

27  _____

28  §§ 17920.5, 17920.6 which Plaintiffs relied upon in their original complaint.  The Court reiterates neither of
these statutes creates a mandatory duty.

their official capacities.  (Doc. 4 at 1-3).  Specifically, Plaintiffs allege defendants Jill Gipson, J.E. Burke Construction Inc., and Joseph Burke entered Plaintiffs' property and took lumber and parts of a large rock planter.  (Doc. 4 at 11).  As to all other defendants, Plaintiffs have not provided sufficient factual allegations to demonstrate an assumption of control of the property or that they have converted the property to their own use.

However, under the California Tort Claims Act ("CTCA"), Plaintiffs may not bring a cause of action for money or damages absent a written claim presented to the public entity and until that claim has been acted upon or deemed to have been rejected.  Cal. Gov't Code § 945.4.  *See Mabe v. San Bernardino Cnty., Dept. of Pub. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001) (stating under CTCA, a claim presented to the public entity is a "condition precedent" to a suit against the public entity).  Furthermore, claims against employees of the public entity also require the claim to be presented to the public entity before a cause of action may be sustained.  Cal. Gov't Code §§ 810.2, 811.2, 811.4, 950.2.   Plaintiffs do not allege that they have provided such a claim to the City of Taft for their conversion claims against Defendant Jill Gipson, J.E. Burke Construction, and Joseph Burke.[4]  Therefore Plaintiffs' cause of action for state conversion is barred.  Cal. Gov't Code §950.2.  *See Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 216 (Cal. 2007) (absent alleged compliance with CTCA, suit against entity is barred).  Consequently, the Court recommends Plaintiffs claim for conversion be **DISMISSED**.

### F.      State Civil Rights Violation

Plaintiffs allege each of the defendants violated Cal. Civ. Code § 52.1, (Doc. 4 at 39), which provides:

> If a person or persons, whether or not acting under the color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of right secured by the Constitution or the laws of the United States, or the rights secured by the Constitution or laws of this state. . . [any individual whose said rights have been interfered with]  may bring a civil action for injunctive and other appropriate equitable relief . . . .

---

[4] Claims against a public entity for injury to personal property must be presented to the public entity within six months of the injury.  Cal. Gov't Code § 911.2.

1  A cause of action under Section 52.1 is appropriate when a defendant has attempted to or completed

2  an act, accompanied by improper means, which interferes with the plaintiff's legal rights. *Austin B. v.*

3  *Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 882-83. (2007).   A "threat" is "an expression of

4  intent to inflict evil, injury, or damage to another." *McCue v. South Fork Union Elementary Sch.*, 766

5  F. Supp.2d 1003, 1011 (E.D. Cal. 2011).  When coercion is inherent in the constitutional violation

6  alleged, an independent showing of coercion is required. *Shoyoye v. Cnty. of Los Angeles*, 203 Cal.

7  App. 4th 947, 959-60 (2012).

8     Plaintiffs allege Defendants interfered with their right to secure and enjoy their own property

9  and attempted to intimidate Plaintiffs into paying for the theft of their property by threatening to place

10  a lien on the property.  (Doc. 4 at 39).  Plaintiffs' factual allegations do not support a claim that the

11  conduct of the Defendants rose to the level of a threat or intimidation. *See City and Cnty. of San*

12  *Francisco v. Ballard*, 39 Cal.Rptr.3d 1 (Cal. Ct. App. 2006).  In addition, Plaintiffs fail to provide and

13  independent showing of coercion in addition to placing a lien on the property.

14     Furthermore, Plaintiffs seek damages for no less than "$50,000 under California Civil Code §

15  52.1 . . . ."  (Doc. 4 at 40).  Under the CTCA, any suit against a public entity for monetary relief

16  requires notice of the claim presented to the public entity regardless of the legal theory under which

17  such relief is sought. *Hasan v. Johnson* 1:08-CV-00381-GSA-PC, 2012 WL 469818, at *2 (E.D. Cal.

18  Feb. 13, 2012).  Plaintiffs have failed to allege facts concerning their compliance with the CTCA and

19  their claim for a violation under Civil Code Section 52.1 is barred.  Cal. Gov't Code §945.4.

20  Consequently, the Court recommends Plaintiffs' Civil Code Section 52.1 violation claim be

21  **DISMISSED**.

22  **IV.    Order**

23     On August 17, 2012, Plaintiffs filed a notice of intent to proceed on the claims found

24  cognizable by the Court.  (Doc. 6).  Therefore, the Clerk of the Court is DIRECTED to issue a

25  summons to Defendants Jill Gipson, Joseph Burke, and J.E. Burke Construction Inc.

26  **IV.    Findings and Recommendations**

27     Based upon the foregoing, Plaintiffs have stated cognizable claims for violations of their

28  Fourth and Fourteenth Amendment rights against defendants Jill Gipson, Joseph Burke, and J.E.

1  Burke Construction Inc.   However, Plaintiffs' remaining causes of action either fail to state factual

2  allegations in support or fail as a matter of law.  In light of Plaintiffs' intention to proceed on the claims

3  found cognizable by the Court (Doc. 6). accordingly, **IT IS HEREBY RECOMMENDED**:

4       1.      Defendants City of Taft, David Noerr, Randy Miller, Craig Noble, Paul Linder, Cliff

5               Thompson, Bob Gorson, Craig Jones, Orchel Krier, Ron Waldrop, David Prentice, and

6               Louise Hudgens be **DISMISSED**;

7       2.      Plaintiffs' claim for a violation of the Racketeer Influenced and Corrupt Organizations

8               Act be **DISMISSED**;

9       3.      Plaintiffs' claims for a violation of oath of office be **DISMISSED**;

10      4.      Plaintiffs' claims for a failure to perform a mandatory duty under Cal. Gov't Code §

11              815.6 be **DISMISSED**;

12      5.      Plaintiffs' claim for conversion under California law be **DISMISSED**;

13      6.      Plaintiffs' claim for a violation of California Civil Rights laws arising under Cal. Civ.

14              Code. § 52.1 be **DISMISSED**;

15      7.      The action proceed on the following claims:

16              a.      Violation of the Fourth Amendment by defendants Jill Gipson, Joseph Burke,

17                      and J.E. Burke Construction Inc.; and

18              b.      Violation of the Fourteenth Amendment by defendants Jill Gipson, Joseph

19                      Burke, and J.E. Burke Construction Inc.

20      These findings and recommendations are submitted to the United States District Judge

21  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

22  Rules of Practice for the United States District Court, Eastern District of California. Within fourteen

23  days after being served with these findings and recommendations, any party may file and serve written

24  objections with the Court.  A document containing objections should be captioned "Objections to

25  Magistrate Judge's Findings and Recommendations."

26  ///

27  ///

28

15

1          The parties are advised that failure to file objections within the specified time may waive the

2    right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3

4    IT IS SO ORDERED.

5          Dated:    **August 21, 2012**                            **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28