# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL ARCHER, AND KEITHA DARQUEA, | Case No. 1:12-CV-00261-LJO-JLT |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTIONS FOR ATTORNEYS' FEES. |
| v. | |
| JILL GIPSON; JOSEPH BURKE; AND, J.E. BURKE CONSTRUCTION, INC., | (Docs. 127 & 128) |
| Defendants. | |

Before the Court in the above-styled and numbered cause of action is Plaintiffs Darrell Archer and Keitha Darquea's Motions for Attorneys' Fees, filed September 8, 2015. (Docs. 127 & 128). The matter is appropriate for resolution without oral argument. *See* E.D. Cal. Civ. L.R. 230(g). Having considered the record and relevant law, the Court will grant Plaintiffs' motions.

## BACKGROUND

Plaintiffs Darrell Archer and Keitha Darquea (together, "Plaintiffs"), proceeding *pro se*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants on February 23, 2012. (Doc. 1). Subsequent to Defendants' motion to dismiss, this Court dismissed certain claims and multiple defendants. (Doc. 12). Defendant moved for summary judgment and of the three

1   remaining causes of action, this Court granted the motion as to Plaintiffs' first cause of action under

2   § 1983 related to Defendant Gipson's warrantless yet reasonable search at the subject property, but

3   in all other ways denied the motion as to the second and third causes of action. (Doc. 81).

4        A jury trial was held in this case from August 4-6, 2015. The jury found in favor of Plaintiffs

5   on their claims that Defendant Jill Gipson ("Gipson") and J.E. Burke Construction, Inc. (together,

6   "Defendants") violated their Fourth Amendment rights by unlawfully seizing their personal property

7   without a warrant, and that these Defendants deprived Plaintiffs of their due process rights by failing

8   to provide adequate notice and opportunity to be heard prior to seizing their personal property.

9        The jury awarded compensatory damages to Plaintiffs of $937.36 "plus interest due as of

10   [August 6, 2015]" against Defendant Gipson and $1.00 against Joseph Burke and/or J.E. Burke

11   Construction, Inc. (Doc. 121). The jury also found that Defendant Gipson and J.E. Burke

12   Construction, Inc.'s conduct was malicious, oppressive, or in reckless disregard of the Plaintiffs'

13   constitutional rights. *See id.* In a bifurcated damages phase, the jury awarded punitive damages of

14   $800.00 against Defendant Gipson and $200.00 against J.E. Burke Construction, Inc. (Doc. 122).

15   The Court entered final judgment on August 10, 2015 (Doc. 125).

16        After prevailing at trial, Plaintiffs filed the instant motions for attorneys' fees (Docs. 127 &

17   128). Defendants filed their Opposition on September 23, 2015 (Doc. 129), to which Plaintiffs filed

18   their Reply on September 30, 2015 (Doc. 130). The matter is now ripe for review.

19                          **LEGAL STANDARD**

20        A district court has discretion to award a civil rights litigant their reasonable attorneys' fees

21   and expenses where they are the prevailing party in an action brought pursuant to 42 U.S.C. § 1983.

22   *See* 42 U.S.C. § 1988(b) (providing in pertinent part that, "[i]In any action or proceeding to enforce a

23   provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a

24   reasonable attorney's fee as part of the costs . . . ."); *see also Bauer v. Sampson,* 261 F.3d 775, 785

25   (9th Cir. 2001) (prevailing "plaintiffs in § 1983 actions 'should ordinarily recover an attorney's fee

26   unless special circumstances could render such an award unjust'") (quoting *Newman v. Piggie Park*

27   *Enters., Inc.,* 390 U.S. 400, 402 (1968)).

28   *//*

**DISCUSSION**

Plaintiffs move for attorneys' fees and expenses under 42 U.S.C. § 1988. Although Defendants present arguments for reducing or denying Plaintiffs' motion for attorneys' fees, they do not challenge the reasonableness of Plaintiffs' lodestar calculation, billing records or hourly rates.

The Court proceeds in two steps when evaluating a request for attorneys' fees under § 1988. "First, courts generally apply . . . the lodestar method to determine what constitutes a reasonable attorney's fee." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013) (internal quotations omitted) (quoting *Costa v. Comm'r of Soc. Sec. Admin.,* 690 F.3d 1132, 1135 (9th Cir. 2012)). Once the prevailing party has carried its burden of showing the reasonableness of the rate and the hours expended, "the resulting product is presumed to be the reasonable fee contemplated by § 1988." *Jordan v. Multnomah Cty.,* 815 F.2d 1258, 1263 (9th Cir. 1987) (quoting *Blum v. Stenson,* 465 U.S. 886, 897 (1984)). Second, "[t]he district court may then adjust [the lodestar] upward or downward," based on the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Gonzalez,* 729 F.3d at 1202 (alteration in original) (quoting *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008), and *id.* at 1209, n. 11 (quoting *Morales v. City of San Rafael,* 96 F.3d 359, 363 n. 8 (9th Cir. 1996)). One "important factor" is "the results obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Where a party is only partially successful, and the successful and unsuccessful claims are "distinctly different claims for relief that are based on different facts and legal theories," the hours spent on unsuccessful claims should be excluded from the reasonable hours calculation. *Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 901 (9th Cir. 1995). However, if the successful and unsuccessful claims are related, the court may at its discretion adjust the total fee award either by specifying particular hours to be eliminated, or by reducing the award to account for the limited success. *Hensley,* 461 U.S. at 436.

3

# I.     PREVAILING PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES

Defendants argue that Plaintiffs are not entitled to attorneys' fees because they proceeded *pro se*. Defendants next argue that the Court should exercise its discretion and not award any attorneys' fees to Plaintiffs because, based on their limited success at trial where they sought an award in excess of $400,000.00 but the jury awarded a mere fraction of that, they should not be considered a prevailing party. Defendants also argue that the jury awarded mere nominal damages, thus, proportionately, the Court should not award any attorneys' fees, citing *Farrar v. Hobby*, 506 U.S. 103 (1992) (holding that "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.").

Plaintiffs aver that they prevailed at trial and thus are entitled to a fees award totaling $111,595.00. Plaintiffs posit that the fee award should not be proportionally tied to the damages award because the award was not nominal. Plaintiffs aver that by awarding punitive damages and a specific amount tied to the lien on the property, the jury awarded more than a nominal damages award. Plaintiffs further argue that the Court should not decline to award attorneys' fees because it is well established that "fail[ure] to recover on all theories of liability is not a bar to recovery of attorney's fees." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (citing *Hensley*, 461 U.S. at 436).

## A.  Prevailing Party

To be entitled to fees, a civil rights litigant must be the prevailing party and the relief must "materially alter[ ] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Fisher v. SJB-P.D., Inc.,* 214 F.3d 1115, 1118 (9th Cir. 2000). A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some benefit the parties sought in bringing suit." *Hensley,* 461 U.S. at 433.

In support of their argument that Plaintiffs did not prevail on all of their claims, Defendants emphasize that the Court granted Defendants' motion for summary judgment as to Plaintiffs' first cause of action, finding Defendant Gipson's initial search constitutional. Even so, Plaintiffs were successful in opposing Defendants' motion for summary judgment on every other cause of action

4

1    and were also successful at trial, obtaining a Judgment in their favor. A plaintiff is entitled to recover

2    attorney's fees even for claims on which she did not prevail, if they "involve a common core of facts

3    or are based on related legal theories." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir.

4    2008) (quoting *Hensley*, 461 U.S. at 435). Here, all of Plaintiffs' claims arise from Defendants'

5    seizure of their personal property and the abatement process, a shared common core of facts. *See*

6    Doc. 1. Therefore, "the district court should not attempt to divide the request for attorney's fees on a

7    claim-by-claim basis." *Ambat v. City & Cty. of San Francisco*, 757 F.3d 1017, 1032 (9th Cir. 2014).

8         For these reasons, the Court concludes that Plaintiffs are the prevailing party. *See Farrar*,

9    506 U.S. at 111("To qualify as a prevailing party, a civil rights plaintiff must obtain at least some

10   relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the

11   defendant from whom fees are sought.").

12        **B.  Civil Rights Litigants Proceeding *Pro Se* Are Not Entitled to Attorneys' Fees**

13        Defendants assert that *pro se* civil rights litigants are not entitled to attorneys' fees under

14   § 1988. Plaintiffs emphasize that Defendants do not cite to authority which indicates that a plaintiff

15   is precluded from recovering fees for which they are contractually obligated to pay. Plaintiffs argue

16   that when contractually obligated to pay counsel, they are entitled to recover fees for legal assistance

17   even if the attorney was not counsel of record. Plaintiffs rely on two state-court cases, *Mix v.

18   Tumanjan Dev. Corp.*, 102 Cal.App. 4th 1318, 1324 (2002) ("if an attorney is in fact retained by the

19   pro se litigant and renders legal services assisting in the lawsuit, the attorney need not be an attorney

20   of record in order for the reasonable fees of the attorney to be awarded to a prevailing party"), and

21   *West Coast Dev. v. Reed*, 2 Cal. App. 4th 706, 707 (1992).

22        Plaintiffs' reliance on these cases is misplaced. Contrary to this case where the controversy is

23   about a fee award pursuant to § 1988, the courts in the exemplar cases contemplate attorneys' fees

24   under California Civil Code section 1717 (*Mix*) or sanctions under state statutory schemes for an

25   underlying non-meritorious action (*West Coast Development*). Therefore, these cases are inapt.

26        As is applicable here, § 1988 generally provides that a prevailing plaintiff is entitled to

27   attorneys' fees in civil rights cases brought under § 1983. *See* 42 U.S.C. § 1988(b). However, where

28   a prevailing plaintiff proceeds *pro se*, he is not entitled to attorneys' fees. *See Kay v. Ehrler*, 499

U.S. 342, 473 (1991) (finding that *pro se* civil rights litigants are not entitled to attorneys' fees under 42 U.S.C. § 1988); *Elwood v. Drescher*, 456 F.3d 943, 947 (9th Cir. 2006) (holding that a *pro se* defendant may not recover attorneys' fees under 42 U.S.C. § 1988); *Gonzalez v. Kangas*, 814 F.2d 1411, 1411-12 (9th Cir. 1987) (collecting cases finding that a *pro se* civil rights litigant is not entitled to attorneys' fees under 42 U.S.C. § 1988).

Plaintiffs here request fees not only for the time Plaintiffs' co-counsel spent performing work after they filed notices of appearance on June 30, 2015, but for work performed before that date. Yet at no point prior to June 30, 2015 did counsel assume responsibility for Plaintiffs' action. Whatever was counsel's role in the case before June 30, 2015, prior to that date Plaintiffs at every opportunity represented to the Court that they were without counsel. Plaintiffs initiated this action on February 23, 2012, filing the pleadings and all motions on their own behalf until June 30, 2015, when attorneys Timothy V. Kassouni ("Mr. Kassouni") and Angela Thompson ("Ms. Thompson") filed a Notice of Appearance as Plaintiffs' counsel. *See* Docs. 92 & 93. Before June 30, 2015, the captions on each of Plaintiffs' filings have only their names and do not include the name of any counsel. *See, e.g.,* Doc. Nos. 1, 75, 84. For example, despite Mr. Kassouni's testimony that he drafted Plaintiffs' opposition to Defendants' motion for summary judgment, Plaintiffs filed the opposition "In Pro Per." Doc. 74.  And, in their Separate Statement of Undisputed Facts filed March 30, 2015, Plaintiffs specifically noted they were "Plaintiffs In Pro Per." Doc. 75. Moreover, Plaintiffs were neither represented by counsel at the settlement conference in January 2015, *see* Doc. 71, nor at the pretrial conference held in June 2015, *see* Doc. 88 at 1:16-17. Plaintiffs continued to maintain in their pretrial statement filed June 2, 2015, that they proceeded "in pro per." Doc. 84. About the pretrial conference held on June 19, 2015, the Court specifically noted that "Plaintiffs Darrell Archer and Keitha Darquea appeared *pro se*," Doc. 88, a fact which Plaintiffs did not dispute.

By these actions Plaintiffs presented to the Court and Defendants that they controlled their own legal strategy and had not authorized an attorney to act on their behalf. *See Kay,* 499 U.S. at 436 n. 6 (noting the definition of an attorney is "one who is legally appointed by another to transact business for him; *specif:* a legal agent qualified to act for suitors and defendants in legal proceedings."). As a result, the Court can only conclude that Plaintiffs were *pro se* for this period.

Plaintiffs insist that their counsel's actions are not unethical pursuant to the ABA Committee on Ethics and Professional Responsibility Formal Opinion 07-446, "Undisclosed Legal Assistance to Pro Se Litigants," (2007). This is of no consequence. Ethics are not at issue here, fees are. A limited relationship for legal services may be permitted, but this does not change how fees are determined under § 1988.  Notwithstanding the ABA's position on the ethical implications, § 1988 has no provision entitling *pro se* litigants compensation for attorneys' work performed while in such a limited relationship. Even if a *pro se* plaintiff later has an attorney, courts have determined that a plaintiff is not entitled to attorneys' fees for work performed at a time when plaintiff retained independent control over the litigation. *See, e.g., Onosko v. Smith*, No. 3:14-CV-00004-EJL, 2015 WL 1003346, at *2-7 (D. Idaho Mar. 6, 2015) (finding that where an attorney provided written legal product but did not assume legal representation, the plaintiff appeared *pro se* and was "legal counsel to himself," the plaintiff was not entitled to attorneys' fees).

Accordingly, the Court declines to award attorneys' fees under § 1988 for work performed by counsel between the time Plaintiffs filed the action in February 2012 and June 29, 2015, a period during which Plaintiffs undisputedly proceeded *pro se. See, e.g., Kay*, 499 U.S. at 435-36 (holding that prevailing *pro se* civil rights litigants are not entitled to recover attorneys' fees). Billing from Plaintiffs' counsel indicates that between March 2 and April 9, 2015, Mr. Kassouni billed for 69.9 hours of work; between May 19 and May 30, 2015, he billed for 9.10 hours; between June 1 and June 29, 2015, he billed for 8.6 hours. *See* Kassouni Decl., Doc. 127-3 at 7-12. Thus, the Court will not include these hours (totaling 87.6) in the fee award calculation. In his declaration, Darrell Archer indicates that prior to June 30, 2015, he also retained Frank & Associates for approximately 13.5 hours of work. *See* Doc. 127-2 ¶ 4. For the same reasons discussed above, the Court will not include in the fee award calculation hours billed by other counsel, including Franck & Associates, during a period in which such counsel did not assume legal representation and Plaintiffs were *pro se*.

## C. Proportionality

Defendants argue that the Court should decrease or deny attorneys' fees proportional to Plaintiffs' success. They note that the local rules in this district provide that when fixing an award for attorneys' fees the Court consider, among other criteria, "the amount of money, or the value of

the rights involved, and the results obtained." L.R. 293. Defendants emphasize that despite Plaintiffs

seeking $400,000 in punitive damages, the jury awarded compensatory damages of $937.36, the

amount of the City's abatement lien, with interest, and punitive damages of only $1,000.00.

That the jury did not award as much in damages as Plaintiffs initially sought does not impact

the Court's determination of a fee award in the way Defendants suggest. There is no rule of

proportionality in a civil rights action under § 1988. *See Blanchard v. Bergeron*, 489 U.S. 87, 96

(1989) (rejecting "the notion that the value of civil rights action for damages constitutes nothing

more than a private tort suit benefitting only the individual whose rights were violated. Unlike most

private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights

that cannot be valued in monetary terms."). Contrary to Defendants' assertion, in determining

reasonable fees under § 1988 the Supreme Court has rejected the application of proportionality. *See*

*City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards

under §1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff

actually recovers."); *Hensley,* 461 U.S. at 435 n. 11 ("We agree with the District Court's rejection of

a mathematical approach comparing the total number of issues in the case with those actually

prevailed upon.") (internal quotation marks omitted); *McCown,* 565 F.3d at 1103 ("[T]he Supreme

Court has disavowed a test of strict proportionality."); *see also McGinnis v. Kentucky Fried Chicken,*

51 F.3d 805, 808 (9th Cir. 1995) (rejecting prorating the lodestar based on a proportional percentage

of claims on which plaintiff prevailed because the proposition "makes no practical sense").

The Ninth Circuit has articulated why the proportionality argument is unavailing:

> It is not per se unreasonable for attorneys to receive a fee award that
> exceeds the amount recovered by their clients. This is especially true in
> civil rights cases, where the dollar amount lawyers recover for their clients
> is not the sole measure of the results the prevailing parties' attorneys
> obtained. Attorneys who "win[ ] a civil rights claim" not only benefit their
> client in terms of the amount of money they recover, "they also confer
> benefits on others throughout society" by, for example, ending
> institutional civil rights abuses or clarifying standards of constitutional
> conduct. *See McGinnis v. Kentucky Fried Chicken of Cal.,* 51 F.3d 805,
> 810 (9th Cir. 1994); *see also Corder,* 947 F.2d at 377 ("Congress has
> elected to encourage meritorious civil rights claims because of the benefits
> of such litigation for the named plaintiff and for society at large . . . ."
> (quoting *Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989))).

8

1    *Gonzalez*, 729 F.3d at 1209-10. A discussion of the societal benefits is relevant to the instant action

2    because Plaintiffs here succeeded in their civil rights claims at trial where the jury found that

3    Defendants unlawfully seized Plaintiffs' personal property without a warrant and Defendants

4    deprived Plaintiffs of their due process rights. Thus the benefit of ending these unconstitutional

5    practices is not Plaintiffs alone, but is also conferred to the public. *See McGinnis,* 51 F.3d at 810. For

6    that reason, "it would be wrong to evaluate the extent of the results Plaintiffs' counsel obtained

7    based solely on the number of dollars they recovered for their clients." *Gonzalez*, 729 F.3d at 1210.

8    Rather, the Court "should determine a reasonable fee amount in light of the context of this case . . .

9    not based on its own notion of the correct ratio between the amount of attorney's fees and the

10   amount the litigants recovered." *Id.* (quoting *Moreno*, 534, F.3d at 1111 ("The number of hours to be

11   compensated is calculated by considering whether, in light of the circumstances, the time could

12   reasonably have been billed to a private client.").

13           Accordingly, the Court declines to apply proportionality to the fee award calculation.

14           **D.  The Damages Award Is Not Considered Nominal**

15           Defendants emphasize that the relief granted was small, and therefore should be treated as

16   nominal. However, it is undisputed that in this case the jury awarded compensatory and punitive

17   damages against Defendants. The Court finds that the relief granted, albeit small, includes punitive

18   damages and, therefore, is not nominal. *See Mendez v. County of San* Bernadino, 540 F.3d 1109,

19   1126 (9th Cir. 2008) (finding that an award of punitive damages alone establishes that relief is not

20   nominal and *Farrar v. Hobby* not applicable).

21           Still, the movant bears the initial burden "of establishing entitlement to an award and

22   documenting the appropriate hours expended and hourly rates." *Hensley,* 461 U.S. at 437; *McCown,*

23   565 F.3d at 1102 ("The party seeking the award should provide documentary evidence to the court

24   concerning the number of hours spent, and how it determined the hourly rate(s) requested."). Here,

25   in support of their request for fees, Plaintiffs have submitted detailed billing for professional services

26   and expenses, as well as declarations from Plaintiffs' counsel and Plaintiffs regarding the billing

27   records. The lawyers' declarations describe their work and hours billed in this case. Ms. Thompson

28   was trial counsel, and Mr. Kassouni co-counsel who provided legal services prior to becoming

1  counsel of record. Accordingly, the Court finds that Plaintiffs have met their initial burden to show

2  that they are entitled to attorneys' fees for the period during which they were represented by counsel.

3  The Court thus proceeds to determine a reasonable award.

4  **II.    ATTORNEYS' FEES**

5      **A. Lodestar Calculation**[1]

6          The Court determines a reasonable fee award using the lodestar method, which calculates a

7  reasonable award based on "the number of hours reasonably expended on the litigation multiplied by

8  a reasonable hourly rate." *Hensley,* 461 U.S. at 433; *Gonzalez,* 729 F.3d at 1202.

9          Plaintiffs seek attorneys' fees and expenses totaling $111,595.00, broken down as follows:

10  (1) professional services provided by Mr. Kassouni between March 2 and April 9, 2015 (related to

11  the opposition to motion for summary judgment for $22,717.50, and expenses of $188.21); (2)

12  professional services provided by Mr. Kassouni between May 19 and May 31, 2015 ($2,957.50

13  related to preparing pretrial statements and correspondence with Plaintiffs); (3) professional services

14  provided by Mr. Kassouni between June 1 and June 24, 2015 ($2,795.00 related to reviewing and

15  drafting a pretrial statement and conferences with Plaintiffs); (4) professional services provided by

16  Mr. Kassouni between June 30 and July 15, 2015 ($1,040.00 related to assisting co-counsel in trial

17  preparation); (5) professional services provided by Ms. Thompson between June 25 and July 14,

18  2015 ($18,142.50 related to reviewing case materials with co-counsel in preparation for trial,

19  meeting with clients, drafting a notice of appearance, researching and drafting oppositions to

20  motions *in limine*, reviewing and revising proposed jury instructions, correspondence with Plaintiffs,

21  research on damages issues, case correspondence, issuing subpoenas to Defendants, reviewing

22  deposition transcripts, exhibit organization, and various other correspondence, and expenses of

23  $16.39); (6) professional services provided by Mr. Kassouni between July 16 and August 28, 2015

24  ($3,152.50 related to client correspondence, consulting with co-counsel on evidentiary issue,

25  correspondence with co-counsel, reviewing court filings, reviewing objections, telephone

26  conferences with clients and Ms. Thompson, and work on the attorneys' fees motion);

27

28  ───────────────
[1] The Court determined, *supra*, that it will not consider 87.6 hours of Mr. Kassouni's time spent while Plaintiffs controlled the litigation *pro se.*

(7) professional services provided by Ms. Thompson between July 15 and August 28, 2015
($46,462.50 related to preparation for and actual trial, trial-related expenses of $4,604.81); and,
finally, (8) professional services provided by Mr. Kassouni related to researching and drafting
Plaintiffs' reply to Defendants' opposition to the instant motion ($4,062.50).

Upon careful review, the hourly billing records submitted with Plaintiffs' declarations[2]
indicate that Mr. Kassouni expended 134.2 hours at a rate of $325.00 ($43,615.00), Ms. Thompson
expended 219 hours at a rate of $295.00 ($64,605.00), billing from Franck & Associates shows 13.5
hours at a rate of $250 ($3,375.00) for a combined total of $111,595.00 in attorneys' hourly billing,
*see* Doc . 130-1 ¶ 2, combined with out-of-pocket expenses ($4,809.41), and costs taxed by the Clerk
($5,488.92), *see* Doc. 132. Thus, there is a total of $121,893.33 in possible compensable fees and
costs. *See* Docs. 127-3 at 7-20; 130-1 at 1-2.

Remaining at issue is the reasonableness of counsel's hourly rates and the hours expended by
Mr. Kassouni (46.6 hours, calculated as 134.2 less 87.6)[3] and Ms. Thompson (219 hours).

### 1.  Hours Worked

The first step in the lodestar method is to determine the number of hours reasonably
expended. In doing so, the Court should exclude hours "that are excessive, redundant, or otherwise
unnecessary." *Gonzalez,* 729 F.3d at 1203; *McCown,* 565 F.3d at 1102.

Remaining at issue is the reasonableness of Plaintiffs' counsel's hours spent on the case by
(1) Mr. Kassouni for 46.6 hours (3.2 hours between June 30 and July 15, 2015 assisting co-counsel
in trial preparation; 9.7 hours  between July 16 and August 28, 2015 corresponding with clients,
corresponding and consulting with co-counsel on evidentiary issues, reviewing court filings and
objections, telephone conferencing with clients and Ms. Thompson, and working on the attorneys'
fees motion; 21.2 hours researching and drafting the instant motion; 12.5 hours on Plaintiffs' reply
brief); and, (2) Ms. Thompson for 219 hours (61.5 hours between June 25 and July 14, 2015
reviewing case materials with co-counsel in preparation for trial, meeting with clients, drafting a

---

[2] Plaintiffs' counsel each filed declarations with billing records showing that Ms. Thompson spent 219 and Mr. Kassouni spent 121.7  hours working on the case. *See* Docs. 127-3, 4. In a second declaration, Mr. Kassouni offers that he spent an additional 12.5 hours "reviewing the Opposition filed by Defendants, and researching and drafting Plaintiffs' reply." Doc. 130-1 ¶ 2.
[3] The Court, *supra,* determined that Plaintiffs are not entitled to fees for work completed during the period when they proceeded as *pro se* litigants, thus removes these hours from the lodestar calculation.

notice of appearance, researching and drafting oppositions to motions *in limine*, reviewing and revising proposed jury instructions, corresponding with Plaintiffs, researching damages issues, corresponding about the case, issuing subpoenas to Defendants, reviewing deposition transcripts, organizing exhibits, and participating in various other correspondence; and, 157.5 hours between July 15 and August 28, 2015 preparing for and participating in the actual trial).

Defendants do not challenge counsel's estimate of time spent working on this case. Despite Defendants lack of opposition, "the district court should not uncritically accept counsel's representations concerning the time expended." *Jordan v. Multnomah Cnty.,* 815 F.2d 1258, 1263 n. 8 (9th Cir. 1987). The burden is on the fee applicant to produce sufficient evidence to support the claim for a fee award. *Id.* As movants, Plaintiffs need only provide a minimal level of detail that identifies the general subject matter of the time expenditures. *See, e.g., Lytle v. Carl,* 382 F.3d 978, 989 (9th Cir. 2004); *Trustees of Directors Guild of Am.-Producer Pension Benefits Plans v. Tise,* 234 F.3d 415, 427 (9th Cir. 2000). In the instant action, Plaintiffs submitted verified billing records and declarations about counsel's time expended on the litigation. *See* Docs. 127-2, 3, 4, 5.

### a.  Ms. Thompson

Plaintiffs' counsel Ms. Thompson in her declaration and billing records indicates that she expended 219 hours in relation to this litigation. *See* Doc. 127-4. In some instances in the billing records, however, Ms. Thompson includes a string of general descriptions of tasks completed over a block of time. It is impossible for the Court to parse how long Ms. Thompson spent on each activity within the corresponding span of time, as her billing records illustrate:

| Date | Description | Hours |
|------|-------------|-------|
| 6/29/2015 | Meeting with clients to discuss trial; review case file; draft substitution of attorneys; email to Tim Kassouni regarding same. | 4.3 |
| 7/1/2015 | Review case file; conference with Tim Kassouni regarding same; research regarding same | 4.3 |
| 7/2/2015 | Draft oppositions to motions in limine; email clients regarding same; email Tim Kassouni regarding verdict forms and jury issues; review case file and deposition transcripts. | 5 |
| 7/3/2015` | Draft and revise proposed jury instructions and proposed verdict form; research regarding same; email to clients and Tim Kassouni regarding same. | 5.1 |

| | | |
|---|---|---|
| 7/6/2015 | Telephone call to Michael Kellar [opposing counsel] regarding exchange of proposed jury instructions and verdict forms; review and finalize same and serve by email; review and finalize oppositions to motions in limine and file with court; research regarding issuance of subpoenas and witness fees; review and respond to email from Darrell Archer regarding same. | 4.8 |
| 7/8/2015 | Draft and issue subpoenas; telephone calls to witnesses; review court's order regarding motions in limine; email to client and Tim Kassouni regarding same; telephone conference with Tim Kassouni regarding same; research regarding damages. | 7 |
| 7/9/2015 | Research regarding damages issues; telephone call to Tim Kassouni regarding same; draft and issue subpoenas; draft cover letters to witnesses; review and revise proposed jury instructions; emails to Michael Kellar [opposing counsel]. | 4 |
| 7/11/2015 | Issue subpoenas to defendants; review deposition transcripts; create proof outline; begin organizing exhibits. | 5.6 |
| 7/14/2015 | Prepare designations of deposition testimony for filing with court; telephone conference with Taft Records Custodian regarding subpoena and production of records at trial; review and revise proposed jury instructions; review defendants' proposed jury instructions; telephone call and email to [sic] Michael kellar [opposing counsel] regarding same; emails to and from Darrell Archer regarding status. | 6.8 |
| 7/15/2015 | Phone conferences with Tim Kassouni and Darrell Archer regarding status; begin preparation of trial binders; phone conference with Michael Kellar regarding jury instructions and lodging of depositions; review exhibits. | 5.5 |
| 716/2015 | Review and organize exhibits; telephone conference with opposing counsel; draft ex parte application regarding designation of expert. | 4.2 |
| 7/17/2015 | Telephone call from Darrell Archer regarding estimate of value; telephone calls from opposing counsel regarding exhibits; review and respond to emails regarding same; draft ex parte application regarding designation of expert; research regarding same. | 1.8 |
| 7/18/2015 | Draft proof outline; begin drafting trial brief; work on voir dire questions. | 5.3 |
| 7/20/2015 | Draft trial brief; research regarding same; review binder of exhibits prepared by opposing counsel; email to opposing counsel regarding additional proposed exhibits; emails to and from client regarding receipts for materials purchased; telephone calls to court reporting services regarding obtaining duplicate original deposition transcripts for lodging with court. | 6.2 |
| 7/21/2015 | Obtain duplicate original deposition transcripts; review deposition testimony; draft and revise proof outline; draft questions for witnesses; draft trial brief; research regarding same. | 5.3 |

| | | | |
|---|---|---|---|
| | 7/22/2015 | Issue subpoena to City of Taft Custodian of Records; telephone call to City Clerk regarding same; telephone call to Michael Kellar regarding meet and confer requirements; lodge original deposition transcripts with court; draft trial brief; research regarding same. | 6.7 |
| | 7/23/2015 | Draft and revise trial brief; research regarding same; telephone calls to and from Michael Kellar [opposing counsel] regarding jury instructions and exhibits; emails to and from Darrell Archer; telephone call from Lorena Casas [witness] regarding trial appearance; draft voir dire questions. | 7.2 |
| | 7/24/2015 | Review and finalize trial brief; file same with court; telephone conference with Tim Kassouni regarding same; telephone conference with Michael Kellar [opposing counsel] regarding joint submission of trial exhibits and jury instructions; compile exhibit binder. | 7.6 |
| | 7/25/2015 | Finalize jury instructions and verdict form; email to opposing counsel regarding same; email to Darrell Archer regarding trial brief; review and finalize exhibit list. | 5.8 |
| | 7/27/2015 | Review and finalize jury instructions, verdict forms and voir dire questions; file and serve same; emails to and from opposing counsel; meeting with paralegal regarding exhibit binders and other tasks; email to Court clerk regarding filings. | 7.2 |
| | 7/28/2015 | Finalize trial exhibits; lodge same with court; draft letter to court clerk; telephone conference with opposing counsel; email clients regarding meeting; conference with paralegal regarding trial exhibits and trial notebooks; draft and review witness questions. | 6.4 |
| | 7/29/2015 | Meeting with clients to discuss trial testimony; file and serve final exhibit list; telephone conference with Michael Kellar [opposing counsel] emails to and from court clerk; review and finalize witness questions for Keitha Darquea and Darrell Archer; telephone call to Lorena Cassas; telephone calls to and from Kimberly Marshall [witness Sylvia Hazel's daughter] regarding trial appearance; conference with paralegal regarding trial binders. | 8.8 |
| | 7/30/2015 | Draft and revise witness questions for plaintiffs, defendants and other witnesses; review defenants' [sic] objections to proposed verdict form; draft and file response; telephone conference with Sylvia Hazel; emails to and from clients; emails to and from opposing counsel; emails to and from Tim Kassouni; draft opening statement. | 10.2 |
| | 7/31/2015 | Draft opening statement; finalize witness questions; review and respond to defendants' late-filed proposed jury instructions; compile and organize trial notebook. | 10.3 |
| | 8/1/2015 | Draft and finalize opening statement; draft closing arguments; review FRE and local rules; review pretrial order. | 5.5 |
| | 8/2/2015 | Finalize trial notebook; review and finalize opening statement and closing arguments. | 5.8 |

1  *See* Doc. 127-3 at 12-18.

2  *i.  Block-Billed Time*

3  For each date's entry listed above, Ms. Thompson lists at least three activities she completed

4  within a span of time absent detail of how long she spent on each activity. For example, on her list of

5  activities for July 30, 2015, there is no detail about how much time counsel spent on each of the

6  numerous activities completed over the 10.2 hours, activities which ranged from revising witness

7  questions, reviewing objections, and drafting the opening statement. *See* Doc. 127-3 at 17. Thus, the

8  Court cannot evaluate whether the respective time expenditures are reasonable. Indeed, because

9  "block billing makes it more difficult to determine how much time was spent on particular

10  activities," this practice impedes the Court's ability to make a reasonableness determination. *Welch*

11  *v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing *Role Models Am., Inc. v. Brownlee,*

12  353 F.3d 962, 971 (D.C.Cir. 2004) (reducing requested hours because counsel's practice of block

13  billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness");

14  *see also Hensley,* 461 U.S. at 437 (holding that applicant should "maintain billing time records in a

15  manner that will enable a reviewing court to identify distinct claims"); *Fischer v. SJB–P.D. Inc.,* 214

16  F.3d 1115, 1121 (9th Cir. 2000) (holding that a district court may reduce hours to offset "poorly

17  documented" billing)).

18  Upon a thorough review of Ms. Thompson's billing records, the Court finds that she billed a

19  total of 219 hours, of which 152.4 are block-billed. As to these hours, the Court finds that Plaintiffs

20  have failed to meet their burden of appropriately documenting the hours expended in the litigation

21  and evidence in support of those hours worked. *See Welch*, 480 F.3d at 948 (citing *Gates v.*

22  *Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992)). Accordingly, to determine a reasonable

23  compensable number of hours the Court will exercise its discretion and apply a 25 percent (25%)

24  reduction of only the block-billed time expenditures, calculated as follows. *Id.*

| | | |
|---|---|---|
| Block-Billed Hours | 156.7 | |
| Non-Block-Billed Hours | 62.3 | |
| **Total Hours Billed by Thompson** | | 219 |
| (Less 25% of Block-Billed Hours) | | (39.2) |
| **Total Compensable** | | **179.8** |

15

1    The Court reduces the total number of Thompson's hours by 25 percent of the block-billed time,

2    calculated as 25 percent of 156.74 hours (39.2 hours) deducted from the total (219 hours less 39.2

3    hours). The adjusted total is 179.8 hours. *See Gonzalez*, 729 F.3d at 1203 (quoting *Gates*, 987 F.2d at

4    1399) ("when faced with a massive fee application the district court has the authority to make

5    across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure

6    as a practical means of [excluding non-compensable hours] from a fee application." *Id.* (internal

7    quotation marks omitted); *see also Welch*, 480 F.3d at 948 (9th Cir. 2007) (affirming across-the-

8    board 20 percent cut to the total hours billed where counsel "block billed"); *Sorenson v. Mink*, 239

9    F.3d 1140, 1146 (9th Cir. 2001); *Chalmers v. Los Angeles;* 796 F.2d 1205, 1210 (9th Cir. 1986);

10   *Fabi Const. Co., Inc. v. Secretary of Labor,* 541 F.3d 407, 411-12 (D.C.Cir. 2008) (finding billing

11   defects such as block-billing, vagueness, and irrelevancy supported 25% reduction in fee award).

12                                   *ii. Billing Excessive for Case Not Factually or Legally Complex*

13           Still at issue is the reasonableness of Thompson's time expenditure of 179.8 hours over the

14   course of the trial. The Court has wide discretion to determine the reasonableness of the hours

15   claimed and reduce these if not reasonably expended, *see Sorenson,* 239 F.3d at 1146, but must

16   provide a "concise but clear explanation" for any specific cuts it finds suitable to apply. *Gonzalez*,

17   729 F.3d at 1205 (citing *Gates,* 987 F.2d at 1400). "Where the documentation of hours is inadequate,

18   the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433.

19           This was a factually and legally simple case. After the Court's Order on Defendants' motion

20   for summary judgment, two claims remained. *See* Doc. 81 at 28. The questions posed to the jury at

21   trial were few and narrow: first, whether Defendants' warrantless seizure violated the Fourth

22   Amendment; second, whether Defendants by their conduct or omissions violated Plaintiffs' due

23   process rights under the Fourteenth Amendment. Moreover, the underlying facts of the case were

24   largely undisputed. Indeed, Defendants agreed that they acted without a warrant. Yet at 179.8 hours,

25   Thompson claims to have spent nearly 40 hours per week over the approximately six weeks from the

26   point at which she became counsel of record, at the very end of June, through the end of trial on

27   August 6, 2015. Counsel was not entitled to bill to learn how to try a case. That education and

28   knowledge is assumed.

                                                    16

The Court also finds counsel's time log vague and excessive. Specific billing entries illustrate these problems and patterns. For example, counsel accounted for 22 hours spent preparing and issuing subpoenas for Plaintiffs' potential 14 witnesses. *See* Doc. 88 at 5; Doc. 127-4 at 11-16. The Court finds that 7 hours would be reasonably spent on 14 subpoenas. Also, counsel in her time log mentions required research, describing it as "research regarding same," but fails to include a description of what legal issues required research. *See* Doc. 127-4 at 11-16. The records also include excessive entries for client correspondence. *Id.*

In organizing Plaintiffs' ten exhibits and preparing a one-page exhibit list, *see* Doc. 108, counsel logged approximately 26.9 hours. *See* Doc. 127-4 at 11-18. For the simple task of organizing exhibits and preparing a one-page list, the Court instead finds four hours to be reasonable.

Counsel claims she expended over 30 hours in relation to a ten-page trial brief, *see* Doc. 102, which in large part is informed by the Court's summary judgment Order, *see* Doc. 81. The extent of counsel's description for her research is "draft trial brief; research regarding same." Doc. 127-4 at 15-16. Where counsel has the benefit of the Court's Order on the motion for summary judgment, the Court finds 10 hours – not 30 – to be a reasonable time expenditure.

Counsel also apparently logged more than 33 hours for work related to jury instructions, and another approximately 15 hours for work related to the opening statement for trial. The jury instructions were ripped from the pages of the Ninth Circuit model instructions. *See* Docs. 123 & 124. Further, the work descriptions in the time logs are not only lumped together in a string of other activities, but include only vague descriptions as some part of 10.2 hours (on July 30), as part of 10.3 hours (on July 31), or as most of 5.5 hours (on August 1), in preparation for what is, in essence, a short summary of the case. *See* Doc. 127-4 at 11-18. Even considering the 25% block-billing reduction, the Court finds 11 hours for such a statement to be excessive.

The Court finds that a combination of excessive billing, inadequate detail in the billing descriptions, and the simple, straightforward nature of the case justifies a reduction in the hours claimed. *See, e.g., Cuviello v. Feld Entm't, Inc.*, No. 13-CV-04951-BLF, 2015 WL 154197, at *4 (N.D. Cal. Jan. 12, 2015) (reducing requested time where the questions presented were not complex, should not have taken so much time, and did not require any extraordinary skill or expertise); *Cotton*

17

*v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1178-79 (N.D. Cal. 2012) (reducing the requested hours where the case was not novel or complex, did not require the number of hours requested, and the court found the billing excessive and inconsistent); *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1116-17, 1119, 1136(E.D. Cal. 2011) (finding reasonable to reduce by nearly 50 percent counsel's requested time in case that did not involve any novel or particularly complex issues); *Alvarado v. FedEx Corp.*, Case Nos. C 04–0098 SI, C 04–0099 SI, 2011 WL 4708133, at *17 (N.D.Cal. Sept. 30, 2011) (finding repeated excessive billing justified a 40% across-the-board fee reduction).

In sum, based on the reality of the facts and law, the Court finds 80 hours of preparation over five weeks generous, but reasonable, where the case is neither novel nor difficult and does not require such extensive labor. *See e.g., Mendez v. County of San Bernardino,* 540 F.3d 1109 (9th Cir. 2008) (where prevailing counsel's billing records are vague, insufficiently descriptive, duplicative, inflated, or block-billed, finding that district courts have broad discretion to reduce the number of hours included in the fee award). Further, the Court finds reasonable the 24 hours expended over three days of trial, and where Thompson had limited involvement with the instant motion finds a reasonable expenditure post-trial to be six hours. Thus, the total compensable hours included in the lodestar calculation for Ms. Thompson is 110 hours (calculated as 80 hours of trial preparation, 24 hours for trial, and six hours post-trial).

### b.   Mr. Kassouni

Remaining at issue is the 46.6 hours Mr. Kassouni expended working with co-counsel during and in preparation for the trial and in relation to the instant motion. According to the verified billing records, Mr. Kassouni served in an advisory role during the trial preparation phase, providing guidance to Ms. Thompson for a total of 12.9 hours in advance of and during trial. Plaintiffs submitted an additional declaration from Mr. Kassouni about his 33.7 hours expended on Plaintiffs' instant motion. Defendants do not challenge Plaintiffs' account of counsel's hours.

### i.   Trial Preparation

A prevailing party is entitled to attorneys' fees for counsel's time "reasonably expended on the litigation." *Webb v. Board of Educ. of Dyer Co.*, 471 U.S. 234, 242 (1985). Here, counsel's and Plaintiffs' sworn declarations and time records substantiate Mr. Kassouni's time spent on the

18

1   litigation and fee petition. *See* Kassouni Decl., Docs. 127-3, 127-4; 130-1; *see also* Docs. 127-2, 5.

2   Counsel's work on the fee petition is compensable under §1988, the purpose[4] of which is to

3   "promote citizen enforcement of important federal policies." *Pennsylvania v. Delaware Valley*

4   *Citizens' Council for Clean Air*, 478 U.S. 546, 559-60 (1986*) supplemented*, 483 U.S. 711 (1987). It

5   is consistent with that underlying purpose for the Court to include counsel's time hours spent on the

6   task of pursuing attorneys' fees. *See id. at* 561.

7          Mr. Kassouni indicates in his time log that on July 16, 2015 he spent .7 hours researching the

8   issue of attorneys' fees for a prevailing plaintiff. *See* Doc. 127-3 at 16. Because counsel could not, at

9   that point, have known if it was necessary or material, the Court finds this activity unreasonable and

10  will exclude the .7 hours from the fee award. Otherwise, in light of Mr. Kassouni's prior experience

11  and co-counsel's late entry into the case mere weeks before trial, the Court finds reasonable Mr.

12  Kassouni's expenditure of 12.2 hours advising co-counsel in advance of and during trial.

13                                    *ii.   Post-Trial Motions*

14         Plaintiffs also request reimbursement for the 33.7 hours Mr. Kassouni expended researching

15  and drafting the attorneys' fees motion and a reply to Defendants' opposition. *See* Kassouni Decl.,

16  Doc. 127-3 at 19. Defendants do not challenge these hours.

17         Generally, "time spent in establishing entitlement to an amount of fees awardable under

18  section 1988 is compensable." *Clark v. City of Los Angeles,* 803 F.2d 987, 992 (9th Cir. 1986).

19  However, other than the 2.5 hours Mr. Kassouni lists on the August 28, 2015 billing records, *see*

20  Doc. 127-3 at 19, Plaintiffs provide no billing records for Mr. Kassouni's work on the fee petition.

21  Absent basic accounting records for these hours, Plaintiffs do not meet the low bar of providing a

22  minimal level of detail to support their request. *See, e.g., Lytle,* 382 F.3d at 989; *Trustees of*

23  *Directors Guild of Am.-Producer Pension Benefits Plans,* 234 F.3d at 427. The instant motion is

24  based on a well-established statutory scheme for attorneys' fees and is not complex. Moreover,

25

26  [4] "Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights
    protected by the Civil Rights Acts." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546,

27  559-60 (1986*) supplemented*, 483 U.S. 711 (1987) (citing *Hensley*, 461 U.S. at 429; S.Rep. No. 94-1011, p. 2 (1976)).
    "The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens," and unless

28  reasonable attorney's fees could be awarded for bringing these actions, Congress found that many legitimate claims
    would not be redressed. H.R.Rep. No. 94-1558, p. 1 (1976).

counsel's lack of billing records make it impossible to evaluate the reasonableness of the hours expended. For these reasons, the Court finds insufficient evidence to support Plaintiffs' account of the hours expended. *See Gates,* 987 F.2d at 1397 ("The fee applicant . . . must submit evidence in support of those hours worked.").

In similar circumstances, district courts have reduced such hours by a flat percentage. *See, e.g., Keith v. Volpe*, 643 F. Supp. 37, 43 (C.D. Cal. 1985) *aff'd*, 833 F.2d 850 (9th Cir. 1987) (finding appropriate a "50 percent [reduction] of the hours claimed preparing attorneys' fees claims"); *see also Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1296 (N.D. Cal. 2014) (commensurate with relief obtained, reducing a plaintiff's non-taxable costs, including attorneys' fees related to fee petition, by 20 percent); *see also Mardirossian v. Guardian Life Ins. Co. of Am.*, 457 F. Supp. 2d 1038 (C.D. Cal. 2006) (finding counsel's 5.2 hours preparing a mediation brief was excessive where the topic was not complex, and reducing the time by 2.7 hours, or approximately 50 percent); *see also Richard v. City of Pasadena*, 889 F. Supp. 384, 393 (C.D. Cal. 1995) (holding that plaintiffs are entitled to attorneys' fees for time spent on fee petition, but entirely excluding time spent preparing supplemental declarations and time spent by co-counsel researching and drafting motion absent any showing that efforts were not duplicative of his efforts on other dates, and a further reduction for lack of specificity of 15 percent).

Similarly here, given the lack of evidence and lack of specificity, the Court finds excessive the 33.7 hours Mr. Kassouni expended on the fee petition. Therefore, consistent with similar cases, the Court will reduce the requested hours by fifty percent. *See Keith*, 833 F.2d at 859 (affirming reduction of hours). Of the 33.7 hours requested for work on the instant fee petition, the Court reduces that by half, for a new total of 16.85 hours. However, even after the flat reduction, the Court finds nearly 17 hours expended on a fee petition to be excessive. Rather, the Court finds a total of 11 hours (eight hours for the instant motion and three hours on the reply) to be reasonable. *See Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 453 (9th Cir. 2010) (quoting *Gates,* 987 F.2d at 1398) ("The district court has a great deal of discretion in determining the reasonableness of the fee . . . including its decision regarding the reasonableness of the hours claimed by the prevailing party."); *see Cuviello,* 2015 WL 154197, at *4 (reducing the hours related to preparing a fee petition).

Accordingly, in Mr. Kassouni's final fee calculation the Court will include 23.2 hours (calculated as 12.2 hours for trial preparation and advising, and 11 hours related to the instant motion).

## 2. Hourly Rate

The second step in the lodestar method is to determine a reasonable hourly rate. Plaintiffs' counsel each filed declarations in which they testify that Mr. Kassouni's hourly rate is $325.00 and Ms. Thompson's hourly rate is $295.00.

Though Defendants do not challenge the requested hourly rates, the movant carries the burden of providing sufficient evidence that the requested rate meets the community standard. *See Blum,* 465 U.S. at 895 n. 11 (1984); *accord Van Skike v. Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009). "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram v. Oroudjian,* 647 F.3d 925, 928 (9th Cir. 2011) (internal quotations and citation omitted) (per curiam). "Generally, when determining a reasonably hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The movant carries the burden of providing sufficient evidence that the requested rate meets the community standard. *See Blum v. Stenson,* 465 U.S. at 895 n. 11; *accord Van Skike,* 557 F.3d 1041 at 1046. Courts should exclude from its initial calculation hours that are "excessive, redundant, or otherwise unnecessary." *Gonzalez,* 729 F.3d at 1203; *McCown,* 565 F.3d at 1102.

In this case, Plaintiffs suggest that their counsel's usual hourly rate should be used in the lodestar calculation. The actual rate charged, however, is not evidence of the prevailing market rate. *See Schwarz,* 73 F.3d at 98. Rather, "the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Ingram,* 647 F.3d at 928 (internal quotations and citation omitted) (per curiam). Courts within the Eastern District of California's Fresno division[5] have found that a reasonable range of

---

[5] Because Counsel fails to carry their burden to show that the rate requested is in line with prevailing rates in the forum district where the action was adjudicated, the Court looks to decisions from within the district awarding fees on similar matters. *See, e.g., Nadarajah v. Holder,* 569 F.3d 906, 917 (9th Cir. 2009) (finding that courts may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience).

attorney's fees is "between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris,* No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014) (collecting cases). A current reasonable range of attorneys' fees, depending on the attorney's experience and expertise, is between $250 and $400 per hour, and $300 is the upper range for competent attorneys with approximately 10 years of experience.[6] *See id.*

On that basis, the Court finds that $325.00 is a reasonable hourly rate to use for the lodestar calculation, given Mr. Kassouni's more than 25 years of experience and his civil rights expertise. *Id.*; *see* Kassouni Decl., Doc. 127-3 ¶ 2. Given Ms. Thompson's decade of experience and in her role as sole counsel at trial, *see* Doc. 127-4 ¶¶ 2-4, the Court finds that $295.00 is a reasonable hourly rate to use for the lodestar calculation. *See Silvester,* 2014 WL 7239371, at *4.

The Court will award fees to Plaintiffs for Ms. Thompson's 110 hours expended over the course of the trial, at a prevailing market hourly rate of $295.00 (for $32,450.00), and for Mr. Kassouni's 12.2 hours expended during the litigation at a prevailing market hourly rate of $325.00 ($3,965.00) and 11 hours expended on matters related to the instant motion at the same rate ($3,575.00). Thus, the Court finds the lodestar amount to be $39,990.00, a reasonable amount to award Plaintiffs for attorneys' fees on this case.

### B.  Reductions or Adjustments

In some circumstances a district court may reduce or adjust the lodestar because it "results in a fee that is either unreasonably low or unreasonably high." *Blum,* 465 U.S. at 897.

Defendants' final argument is that the Court should exercise its discretion and either deny or reduce any award because Plaintiffs did not negotiate in good faith at the settlement conference.

---

[6] For practitioners with less than ten years of experience courts have found that a reasonable range for attorneys' fees is "between $175 and $300 per hour." *See id.* (finding reasonable a $375 hourly rate for attorneys with 18 and 20 years of experience; $350 for attorney with 11 years of experience, $285 for attorney with ten years of experience); *see, e.g., Estate of Crawley v. Kings Cnty.,* No. 1:13-CV-02042-LJO, 2015 WL 4508642, at *7 (E.D. Cal. July 24, 2015) (finding a $330 hourly rate appropriate for attorney with approximately 15 years of experience); *Willis v. City of Fresno,* No. 1:09-CV-01766–BAM, 2014 WL 3563310, at *12-14 (E.D. Cal. Jul. 17, 2014) (finding a $300 hourly rate appropriate for attorney with 19 years of experience); *Miller v. Schmitz,* No. 1:12-CV-00137-LJO-SAB, 2014 WL 642729 at *3 (E.D. Cal. Feb. 18, 2014) (finding a $350 hourly rate appropriate for attorney with 20 years of experience).

1  Specifically, the Court should decline to award attorneys' fees on the basis of a Rule 16 violation

2  where Plaintiffs failed to comply with a court order to participate in a conference.[7]

3      This argument fails. It is uncontroverted that Plaintiffs attended and participated in the

4  settlement conference held on January 21, 2015. *See* Doc. 71. Defendants cite no case law standing

5  for the proposition that a party's *efforts* relative to negotiations during a pretrial settlement

6  conference impact a prevailing plaintiff's attorneys' fee award, post-trial. Rather, the Ninth Circuit

7  provides that it is within a district court's discretion to consider *amounts* of settlement offers when

8  determining a reasonable fee.[8] *See A.D. v. California Highway Patrol,* 712 F.3d 446, 460-61 (9th

9  Cir. 2013). The Ninth Circuit specifically instructs that "the district court has the discretion (1) to

10 consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as

11 much or as little weight as it sees fit." *Id.* at 461 (citing *Lohman v. Duryea Borough,* 574 F.3d 163,

12 169 (3d Cir. 2009) (noting that settlement offers are "clearly only one factor to be considered in the

13 award of fees," and that the district court "is also free to reject such evidence as not bearing on

14 success"); *cf. In re Kekauoha -Alisa,* 674 F.3d 1083, 1093-94 (9th Cir. 2012); *Ingram,* 647 F.3d at

15 927 (finding that when determining attorneys' fee awards, Rule 408 does not bar consideration of

16 settlement offers).

17     As is within its discretion, the Court concludes that neither the parties' respective offer

18 amounts at the settlement conference had an impact on Plaintiffs' ultimate success at trial. *See*

19 *Lohman,* 574 F.3d at 169 (noting that settlement offers are "clearly only one factor to be considered

20 in the award of fees," and finding that the district court "is also free to reject such evidence as not

21 bearing on success"). The Court acknowledges that Plaintiffs attended the conference without

22 counsel. *See* Doc. 71. As discussed at length above, a plaintiff cannot be compensated for an

---

[7] Plaintiffs ask the Court to strike from Defendants' motion the description of the settlement conference as violative of the confidential nature of settlement communications, pursuant to 28 U.S.C. 652(d) ("each district court shall, by local rule adopted under section 2071(a), provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications."). However, because it is within a district court's discretion to contemplate such details, the Court denies Plaintiffs' request.

[8] While Plaintiffs' argument relies on previous precedent, *see McCown,* 565 F.3d at 1102 (holding that court could not consider the parties' settlement negotiations in determining a reasonable fee), there has since been intervening law. "Under the law now in effect, Federal Rule of Evidence 408 does not bar district courts in the Ninth Circuit from considering amounts discussed in settlement negotiations as evidence of the extent of the plaintiff's success." *A.D.,* 712 F.3d at 460-61, *cert. denied sub nom. Markgraf v. A.D.,* 134 S. Ct. 531 (2013) (citing *In re Kekauoha–Alisa,* 674 F.3d at 1093–94; *Ingram,* 647 F.3d at 927).

1   attorney's work performed when the plaintiff proceeded *pro se.* The knife cuts both ways. Neither

2   will the Court hold counsel accountable for a plaintiff's conduct or choices made without counsel.

3   Finding no Rule 16 violation, the Court will not on this basis reduce or adjust the fee award.

4          Finally, to the extent that Defendants mean to move for Rule 11 sanctions related to

5   Plaintiffs' conduct at the January 2015 settlement conference, it is untimely and improperly done.

6   The Court declines to impose sanctions.

7   **III.    OTHER COMPENSABLE EXPENSES**

8          Plaintiffs also seek reimbursement for their counsel's trial-related and travel expenses, as

9   well as counsel's time expended on the instant motion. Defendants do not challenge this portion of

10  the motion.

11         Section 1988 "allows for recovery of reasonable out-of-pocket expenses," including travel

12  costs, so long as they were "reasonably expended." *Woods v. Carey,* 722 F.3d 1177, 1180 (9th Cir.

13  2013).  Plaintiffs have provided a detailed list of expenses directly related to relevant litigation costs

14  and travel to the trial held at the Fresno Division of the Eastern District of California between

15  August 4-6, 2015. *See* Kassouni Decl., Doc. 127-3 at 7-20. Plaintiffs include on their list charges for

16  sending courtesy copies and filings to the court and opposing counsel as well as using an electronic

17  filing document management service ($188.21), federal express ($16.39), and various administrative

18  costs ($3,649.55), including witness fees and mileage for appearances at trial, office supplies such as

19  trial binders, process service fees for subpoenas and witness fees, costs related to deposition and city

20  council meeting transcripts, and costs for professional services of a paralegal for 17.5 hours at

21  $25.00 per hour. Plaintiffs' total requested administrative costs are $3,854.15. As for travel

22  expenses, Plaintiffs include Ms. Thompson's meals during trial ($157.88), travel time and mileage

23  "to and from Fresno" ($190.90), and the "Hotel accommodations during trial" ($806.48). The total

24  request for travel-related expenses is $955.26. Together, the administrative and travel costs Plaintiffs

25  request total $4,809.41.

26         Defendants do not dispute these expenses. The Court finds Plaintiffs' billing records show

27  that the out-of-pocket expenses are reasonable and demonstrably linked to the litigation. *See Woods*,

28

24

722 F. 3d at 1180. Therefore, Plaintiffs have demonstrated that these reasonable expenses, totaling $4,809.41, are compensable.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Plaintiffs are prevailing civil rights litigants and are thus entitled to an attorneys' fees award pursuant to § 1988(b), though not for the full $111,595.00 they seek. The Court calculates the fee award as follows:

|  |  | Hours | Hourly Rate | Subtotal | Amount |
|---|---|---|---|---|---|
| Mr. Kassouni | Work Performed on or after June 30 | 12.2 | $325.00 | $3,965.00 |  |
|  | Fee Petition and Reply | 11 | $325.00 | $3,575.00 |  |
|  | *Kassouni: Total Compensable* | 23.2 | $325.00 | $7,540.00 | $7,540.00 |
|  |  |  |  |  |  |
| Ms. Thompson | Total Billed, Trial Preparation and Trial | 219 | $295.00 | $64,605.00 |  |
|  | (Less 25% of Block-Billed Work) | (39.2) | $295.00 | ($11,564.00) |  |
|  | (Less Excessive Billing ) | (69.8) | $295.00 | ($20,591.00) |  |
|  | *Thompson: Total Compensable* | 110 | $295.00 | $32,450.00 | $32,450.00 |
|  |  |  |  |  |  |
|  | **Total Compensable Fees** |  |  |  | **$39,990.00** |
|  | **Out-of-Pocket Expenses** |  |  | $4,809.41 | **$4,809.41** |
|  |  |  |  | **TOTAL COMPENSABLE** | **$44,799.00** |

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' motions for attorneys' fees (Docs. 127 & 128) are **GRANTED**, as follows:

(1) the Court awards Plaintiffs $39,990.00  in attorneys' fees;

(2) $4,809.41 in litigation expenses; and,

(3) $5,488.42 in taxable costs assessed by the Clerk. *See* Doc. 132.

In total, Plaintiffs are entitled to $50,287.83 in fees, costs, and expenses.

**IT IS SO ORDERED**
**Dated: December 28, 2015**

**/s/ Lawrence J. O'Neill**
**United States District Judge**